STATE OF IOWA, appellee, v. DONALD MAX BALES, appellant.

No. 49947.

(Reported in 102 N.W.2d 162)

April 5, 1960.

Hall & Ewalt, of Indianola, for appellant.

Norman A. Erbe, Attorney General, Marion R. Neely, Assistant Attorney General, and James R. Hoyman, Warren County Attorney, for appellee.

LARSON, C. J.—A jury found defendant guilty of assault with intent to inflict great bodily injury in violation of section 694.6, Code of Iowa, 1958. This appeal only raises two questions for us to decide. The first is whether the trial court erred in refusing to admit testimony of two witnesses for the defense as to alleged statements made by the prosecuting witness several days after the assault took place. The second relates to the propriety of Court Instruction No. 14 on self-defense. We think the trial court was right on both issues and, therefore, did not err in overruling defendant's motion for a new trial.

The involved circumstances are not in serious dispute. The defendant-Bales, age 16, and Verle C. Higgins, age 16, the injured party herein, had been together the preceding evening when a missing cigarette case and some change from a five-dollar bill became the object of a controversy. The defendant and a Hembry boy were just leaving a pond site on the Vander Linden farm when an automobile bearing Higgins and two others came up. Higgins jumped out and approached the rear of the Hembry car and, as he did so, defendant-Bales got out facing him. Higgins, in testifying for the State, said: "He [the defendant] pulled out his gun and he shot once and he missed me. He shot again. Of course, I took a step toward him when he shot the first time. He shot again. I went down on my knees, and I got up and I was standing on one foot. I apparently said a few words I shouldn't have * * * so he shot the third time." The other witnesses did not testify to more than two shots. The Hembry boy testified: "I think there was a pause [between shots]; then he [Bales] shot, right in there, at his feet. I was sitting in the car when these shots took place. I observed Verle

Higgins after the shot or shots. After the first shot, he moved forward a little, and he shot again. I saw him fall."

The defendant-Bales testified that he was standing out of the car, that he asked Higgins if he had that cigarette case, and when he said he "didn't", told him "to get on away and leave us alone then." When Higgins kept on coming toward him at a "fast walk" with his fist clenched, "I reached into the car and got the gun. * * * I * * * aimed at the ground in front of myself then, and pulled the trigger twice." He also said he "backed up after the first shot. * * * As I fired the pistol my intention was to shoot in the ground and scare him off. * * * I did not know he was hit."

The witnesses estimated the distance between the boys at the time of the shooting was from five to ten feet. The second bullet entered Higgins' foot.

After the State had rested, and the defendant-Bales had testified, the defense called two witnesses, Mrs. Richard Balzar and Jerry Weeks, to testify as to statements made to them by Higgins several days after the shooting. The State objected to that testimony for the reason that "it is incompetent, irrelevant and immaterial, and has no bearing on the issues before this court, has no probative value to the issues before this court." Pursuant to an inquiry by the court, defendant's counsel stated: "The purpose goes to the *intent* of the defendant." (Emphasis supplied.) The jury was then excused and a proffer made. It was stated Mrs. Balzar would testify that Verle Higgins told her a week or ten days after the shooting that he and defendant, Donald Bales, were "smarting off" and that he walked into the shot, that he thought the shots were blanks; also that Jerry Weeks would say that two or three days after the event Verle Higgins stated to him that the shooting was an accident and as much his fault as the defendant's.

The State renewed its objection to this evidence, contending Higgins, under oath, had testified "as to what occurred, what he saw, what he perceived on the day involved, * * * that this would have no probative value whatsoever as to the intent of the defendant, would be inadmissible as being remote, * * * would

be an opinion and conclusion of Mr. Higgins" at that time, and not binding on the State.

The court rejected the offer, stating it felt "that anything that the witness Higgins thought is not material nor does it have a direct bearing on the intent of the defendant in this case."

While it would seem this evidence on the issue of intent was both relevant and material, that is not conclusive, and we are satisfied that as offered it was not admissible.

█ █ I. It is not competent to prove what a prosecuting witness has said on subsequent occasions except for the purpose of impeaching him. It was not so offered here and did not appear a part of the res gestae or any other generally recognized exception to the hearsay rule. Not falling within any recognized exceptions to the rule, it was only hearsay and inadmissible. We announced this rule applicable in criminal cases as early as State v. Ruhl, 8 (Clarke) Iowa 447, 451.

█ In 22 C. J. S., section 745, page 1280, the rule *in criminal cases* is stated as follows: "Declarations of the person injured which tend to exculpate accused, such as declarations that the act was an accident, or that the person injured or a third person was at fault, or declarations expressing forgiveness or a reluctance to prosecute, are not admissible, where they are not part of the res gestae, nor dying declarations."

The Federal courts also recognized the rule and, in applying it in Guy v. United States, 71 App. D. C. 89, 107 F.2d 288, the court held that in homicide prosecution where declarations of the victim were evidently due either to her desire to shield accused, or to the fact that drink and blows had confused her notion of what happened, a rejection of declarations of the victim that she fell and that accused did not hurt her did not require a reversal.

In 22 C. J. S., section 740, page 1276, we find the rationale of the rule where it is stated: "The person injured by the crime, whether alive or dead, is in no sense a party to the prosecution, and therefore his statements and declarations are not evidence either for or against accused, unless they are relevant on the question of accused's guilt and were made in his presence, or unless they are admissible as part of the res gestae * * * or per-

682

haps as threats * * *. Such testimony is generally inadmissible as hearsay."

See also State v. Smith (Iowa), 193 N.W. 181; State v. Kneeskern, 203 Iowa 929, 945, 210 N.W. 465; State v. Cooper, 195 Iowa 258, 191 N.W. 891.

In this connection it may be well to note that a further exception to the hearsay rule as to admissions by a party in a civil case is not here involved. Thus, that exception would not be applicable here.

■ II. The rule is well established in this jurisdiction that, although an insufficient objection is interposed, if the court sustains the same and there was in fact a good and sufficient objection to the reception of the evidence, there is no reversible error. In re Will of Smith, 245 Iowa 38, 46, 60 N.W.2d 866, and cases cited therein. In re Will of Crissick, 174 Iowa 397, 416, 156 N.W. 415, 422, often referred to as ably stating the rule, it was said: "If matter is, in fact, objectionable * * * it does not matter that objection was not more specific, or that none was interposed. * * * But, where the court sustains an objection, and there are, in fact, good grounds for so doing, there will be no reversal because good reasons or full reasons were not presented below."

Here, even though it is not conceded that the objections made by the State to the testimony of Mrs. Balzar and Weeks were insufficient, it is quite clear the basis upon which the court sustained the objection, that of immateriality, was not a proper one. However, as we have indicated, such testimony as offered was not timely, was not for impeachment purposes, and as it did not fall within any recognized exceptions to the hearsay rule it was inadmissible. No reversible error occurred in the court's rejection of it.

■■ III. Defendant further contends that this evidence would have been admissible for impeachment purposes; that if a correct objection had been made by the State and sustained, defendant could have then laid a proper foundation for such testimony and had it admitted. Then he argues it would have received just and proper jury consideration. In other words, if he was granted a new trial, a proper foundation would be laid

and the evidence would be admissible for impeachment purposes. Although this argument has some logic, we considered that identical problem in the case of In re Will of Smith, supra, where we said at page 47 of 245 Iowa: "Contestants say, however, that injustice was done them because if the defect in their offered testimony had been pointed out, presumably by objection to its competency based on the absence of a foundation for impeachment, they might have obviated it by asking leave to recall the witness Moran for the purpose of further cross-examination in which the proper basis for the impeaching testimony might have been established." There, as here, it was pointed out that this would have involved reopening proponent's case, and that would have been within the sound discretion of the court. We concluded: "* * * we think the real answer to this contention is that we must judge evidence as the record stands when it is offered. Hibbets v. Threlkeld, 137 Iowa 164, 168, 114 N.W. 1045; I Wigmore on Evidence, Third Ed., section 17, page 319."

However, even if we did not feel bound by that decision, we would have to hold, as pointed out in Division I, that this evidence offered as substantive evidence of intent was not competent, and thus inadmissible, when offered.

We must conclude that, while much of this evidence rejected could have been introduced after proper foundation had been laid by cross-examination of Higgins, it was not done timely, and there is no error in the court's rejection of it as substantive matter in defendant's case. State v. Powell, 237 Iowa 1227, 1246, 24 N.W.2d 769, and cases cited; 28 R. C. L. 633, section 219.

IV. The rule is well settled in Iowa that the giving of an instruction which has no basis in the evidence is reversible error. State v. Smith, 129 Iowa 709, 717, 106 N.W. 187, 190, 4 L. R. A., N. S., 539, 6 Ann. Cas. 1023. We have no quarrel with that rule, but find ourselves unable to agree with defendant's counsel that it has application here. In the Smith case we reversed because the court gave an instruction that " 'Defendant cannot be convicted upon his confession alone, unless made in open court, unless accompanied with other proof that the offense was committed,' " when there was "not a scintilla of evidence in

the record even tending to prove that a confession was ever made by the defendant."

█ In the matter at hand there was much more than a scintilla of evidence that defendant was acting in self-defense and that such an instruction, if not required, was proper. It was the defendant himself who testified that Higgins came at him in a "fast walk" with clenched fists, and that he backed up and requested Higgins "to get on away and leave us alone." No other inference is possible under the record but that Higgins approached Bales in a hostile manner. The following shots to "scare him off", one of which hit Higgins, were ample evidence to justify the court's language that "The law approved of a successful resistance, but the party assailed, after he has fully repelled the unlawful assault, cannot go further, and if he goes further and uses more force than necessary, then he himself becomes the aggressor and becomes guilty to the extent of such unnecessary and unlawful force as is used by him."

While only Higgins testified to a third shot, the jury could have found that the situation justified only one shot or none at all. We are satisfied that Instruction No. 14 did not constitute error. In State v. Brackey, 175 Iowa 599, 157 N.W. 198, another case involving an alleged assault with intent to inflict great bodily injury, such an instruction was held quite proper.

█ V. Upon the verdict of guilty, the trial court transferred this matter to the Juvenile Court and sentenced the defendant to the Training School for Boys at Eldora, Iowa. It may appear that the sentence was a bit severe, but unless such use of firearms by juveniles is firmly discouraged, even more serious consequences may be expected. Then, too, the trial court was in the best position to observe the defendant and apply the most suitable correctional measures.

Having found no error in the proceedings before the trial court, we must hold that defendant's motion for a new trial was correctly overruled.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.