STATE of Iowa, Appellee,

v.

William Earle BURT, Appellant.

No. 59316.

Supreme Court of Iowa.

Jan. 19, 1977.

Charles T. Mattson, Mattson & Gilliam, P. C., Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Lee M. Jackwig, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

Defendant was charged by county attorney's information with shoplifting an item worth more than $20 in violation of § 709.-20, The Code. A jury found him guilty and he was sentenced to serve a term not to exceed five years in the Men's Reformatory at Anamosa. Defendant appeals and we affirm.

There was abundant trial evidence upon which the jury could have found the following facts.

September 2, 1975, Eugene Handeland, manager of Black's College Square in Cedar Falls, returned from dinner break and observed defendant in a semi-crouch behind a rack of coats. Maneuvering for a better view, Handeland observed defendant, still crouching, stuffing something into a shopping bag resting on the floor. The bag was bulging. Right above defendant on the rack was an empty, rocking coat hanger.

Defendant left the store at a fast walk. Handeland told a clerk to call the police "because somebody just stole a coat" and chased defendant up the street. The latter entered a vehicle operated by a female driver. Handeland testified he stood by the open, passenger-side window and "I put my hand on the door and said 'Sir, I would like to talk to you'". Defendant made no response. The car drove off.

Handeland followed the auto carrying the defendant for some time but was unable to stop it. He reported the license number to the police. The car was driven by defendant's girlfriend who testified for the State that defendant had entered the car with a sack, another man "come outside" and stood by the car and defendant said "Come on,

let's go". She saw the other car following the one she was driving.

A control record check made by Handeland upon his return to the store disclosed the garment taken was a woman's size large, patch work, multi-colored, leather coat valued at about $48.

Two or three days later defendant returned to the store and offered to pay Handeland for the coat, although he denied stealing it. The police had asked defendant to meet them at the police station. When Handeland mentioned payment would not terminate the prosecution, defendant said he would talk to the policeman first. The coat was neither returned nor paid for.

Seeking reversal of his conviction, defendant raises four issues which we treat in the divisions which follow.

I. *Did trial court erroneously admit testimony relating to defendant's offer to pay for the coat?*

■ Questions eliciting Handeland's testimony concerning defendant's offer to pay for the coat were timely objected to as calling for hearsay and an offer of civil compromise. The objection further asserted the evidence was not an admission.

We are convinced, however, this evidence was admissible as a quasi-admission against penal interest. *State v. Ritchison*, 223 N.W.2d 207, 212 (Iowa 1974); *State v. Williams*, 207 N.W.2d 98, 107–108 (Iowa 1973).

■ The exclusionary rule designed to exclude an offer of compromise in a civil case when tendered as an admission of weakness of opposing party's claim or defense is ordinarily not applicable in a criminal case, except in a plea-bargain situation. McCormick on Evidence § 274, at 664–665 (2d ed. 1972); 4 Wigmore on Evidence § 1061, at 46 (Chadbourn rev. 1972). The public policy of promoting compromise which lies behind the exclusionary rule in civil controversies has no application in the criminal law field where statutory safeguards against compounding felonies and offenses apply. See §§ 722.1, 722.2, 773.50, The Code. From the testimony concerning

defendant's offer to pay for the coat, the jury could have inferred he had in fact stolen it and wanted to avoid prosecution for a public offense.

We find no merit in this ground advanced for reversal.

II. *Was trial court correct in admitting evidence of a prior robbery conviction to impeach defendant as a witness?*

■ Before presenting his evidence defendant asked for a ruling on "the impeachment possibility". Apparently prior discussions in chambers had gone unreported. Trial court, ascertaining defendant had prior felony convictions for robbery and carrying a concealed weapon, ruled the prosecutor might cross-examine defendant for impeachment on the robbery conviction but not that of carrying a concealed weapon.

Following this ruling, evidence of the robbery conviction was elicited on defendant's examination in chief. In not contending this waived any asserted error, the State was probably mindful of our consideration of this issue on its merits despite a claim of waiver in *State v. Miller,* 229 N.W.2d 762, 770 (Iowa 1975).

As we interpret it, defendant's argument has two facets. First, he argues we should further narrow our holding in *State v. Martin,* 217 N.W.2d 536 (Iowa 1974) to restrict impeachment to prior convictions bearing directly on defendant's credibility (such as perjury, fraud and deceit, and larceny by misrepresentation) or hold all such impeachment evidence violative of defendant's constitutional right to testify in his own defense. Passing the issue that the record does not disclose these grounds were urged below, we are not disposed to constrict application of § 622.17, The Code, further than we have in *Martin,* supra.

We have held a conviction for larceny reflects on veracity and, when all other *Martin* criteria are met, is available for impeachment purposes. *State v. Conner,* 241 N.W.2d 447, 454–455 (Iowa 1976); *State v. Miller,* supra, 229 N.W.2d at 769–770. We decline to hold that robbery, which in essence is larceny from the person with

additional elements including force or violence or fear thereof, is any less reflective of defendant's veracity.

The second facet of defendant's argument seems to assert the robbery conviction is so similar to the charge of shoplifting its value for impeachment in this trial was outweighed by a substantial danger of undue prejudice. Defendant relies on a rationale articulated in *People v. Delgado,* 32 Cal.App.3d 242, 248–249, 108 Cal.Rptr. 399, 404–405 (1973), a decision cited in *Martin,* supra, 217 N.W.2d at 543.

■ We hold the probative value of a robbery conviction for impeachment purposes in a shoplifting trial is not outweighed by any likelihood that a jury will be led astray and convict an innocent man because of his bad record. See *Martin,* supra, 217 N.W.2d at 543. That danger is no more apparent here than it was in *Miller,* supra, where we approved (in a shoplifting trial) admission of four prior convictions: two for larceny in the nighttime, one for larceny and one for shoplifting.

Trial court did not abuse its discretion in admitting evidence of defendant's prior robbery conviction.

III. *Was trial court right in refusing to examine the jurors to determine the possible prejudicial effect of a newspaper article published during trial?*

Trial of this case commenced Monday, February 2, 1976. Apparently no evidence was taken until Tuesday morning, February 3. On the morning of February 4, defendant made an in-chambers record, introducing into evidence a news article which had appeared in "Tuesday night's" February 3 issue of The Waterloo Daily Courier. Defendant argued this publication conveyed to the jury the impression defendant faced other criminal charges. Defendant moved for mistrial and, in support of that motion, requested the court to examine the jury "based upon the following question: Have any of the jurors read the article concerning this matter which appeared in last night's Courier".

The news release in question fairly summarized the evidence and trial progress to time of publication but in concluding, stated:

"In Monday's Courier, it was erroneously reported Burt is on trial in connection with the alleged theft of some record albums.

That theft involves the theft of 10 record albums from Penney's department store at the Cross Roads shopping center and is not connected with the Black's department store case now being tried."

The State resisted, arguing the article did not connect defendant with the other offense, the motion assumed the jury violated the court's admonition not to talk about the case with anybody or read any reports of the trial during progress of the trial, the requested interrogation would tempt the jury to read the article, and finally the unusual nature of such interrogation might influence the jury to make the connection feared by defendant between the two crimes.

Trial court overruled the motion and declined to conduct the requested interrogation, observing such action might invite error. It found the February 3rd article was not prejudicial and did not connect defendant with the record album theft. The court observed if there was an erroneous publication on Monday, February 2nd, that article should have been the subject of a motion and brought to the court's attention prior to taking evidence in the case.

■ We will not speculate whether the February 2nd news article was prejudicial. It is not before us because defendant did not elect to offer it in evidence nor make a timely motion based on its asserted prejudicial effect on the jury. See *State v. Ware*, 205 N.W.2d 700, 702 (Iowa 1973).

■ But with respect to the second publication on February 3, defendant asserts trial court violated Standard 3.5(f), A.B.A. Standards Relating to Fair Trial and Free Press. We prospectively adopted that rule in *State v. Bigley*, 202 N.W.2d 56, 58 (Iowa 1972). A portion of Standard 3.5(f) relevantly provides:

"If it is determined that material disseminated during the trial goes beyond the record on which the case is to be submitted to the jury *and raises serious questions of possible prejudice*, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material." (Emphasis supplied).

It is apparent the procedure outlined in this standard may be mandatorily invoked by a party only where the material per se "raises serious questions of possible prejudice". We concur in trial court's judgment the news article in evidence did not meet that test.

Thus it devolved on defendant to demonstrate evidence of jury prejudice. It becomes significant here, as it was in *Bigley*, supra, 202 N.W.2d at 57, that no reason was advanced to believe jurors had violated trial court's admonition. Here, as in *Bigley*, defendant chose not to renew his claim in a new trial motion supported by juror's affidavits or testimony. The failure to prove prejudice was controlling in *Bigley* and, in these circumstances, is controlling here. See *State v. Lunsford*, 204 N.W.2d 613, 619 (Iowa 1973).

Trial court committed no reversible error in refusing the request to examine the jury and in overruling the mistrial motion.

IV. *Was trial court right in submitting to the jury the instruction on concealment of unpurchased goods?*

■ The court submitted to the jury its instruction 7 which provided in relevant part,

"The fact that any person has concealed unpurchased goods or merchandise of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be material evidence of concealment of such article with the intention of converting the same to his own use without paying the purchase price thereof * * *."

This instruction was based on § 709.21, The Code. See *State v. Estrella*, 257 Iowa

462, 469, 133 N.W.2d 97, 101 (1965). Defendant excepted on the ground there was no evidence in the record showing concealment.

Defendant relies on the principle an instruction submitting an issue unsubstantiated by evidence is generally prejudicial. *State v. Mays*, 204 N.W.2d 862, 865 (Iowa 1973); *State v. Cameron*, 254 Iowa 505, 509, 117 N.W.2d 816, 818 (1962).

■ On the other hand, it seems clear this instruction, like other instructions, may be based on circumstantial evidence. Cf. *State v. Bales*, 251 Iowa 677, 683–684, 102 N.W.2d 162, 166 (1960). We hold the circumstantial evidence of concealment in this case, detailed in the preliminary factual recital, supra, was sufficient to justify the above instruction based on the statutory inference.

Because we find no reversible error in any of the grounds for reversal relied on by defendant, trial court's judgment is affirmed.

AFFIRMED.