In re the DETENTION OF Carol PALMER.

State of Iowa, Appellee,

v.

Carol Palmer, Appellant.

No. 03–2004.

Supreme Court of Iowa.

Jan. 21, 2005.

Mark Smith, First Assistant Public Defender, and Matthew S. Sheeley, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, Cris Odell Douglass and Andrew Prosser, Assistant Attorneys General, and John Sarcone, County Attorney, for appellee.

CADY, Justice.

Carol Palmer appeals from a district court judgment finding him to be a sexually violent predator subject to civil commitment under Iowa Code chapter 229A (2003). He claims the court erred in admitting opinion testimony and in refusing to instruct the jury that he was presumed not to be a sexually violent predator. We affirm.

## I. Background Facts and Proceedings

The appellant, Carol Palmer, is seventy-five years old. He is a pedophile with a long history of molesting young girls. His criminal record dates back to 1958, when he was arrested and served thirty days in jail for asking an eight-or nine-year-old girl to walk home from the movies with him. Since that time, his record has included convictions for lascivious acts with his wife's great-niece, a neighborhood girl, and two of his wife's granddaughters. Palmer's most recent conviction occurred in 2002. He was convicted of indecent contact with a child and indecent exposure for molesting the daughter of his son's friend and was sentenced to three years in prison. During his time in prison, he began, but did not complete, the sexual offender treatment program.

On June 17, 2003, the State filed a petition to have Palmer declared a sexually violent predator subject to civil commitment under chapter 229A. Prior to trial, Palmer filed a motion in limine seeking to limit the testimony of Dr. Anna Salter, an expert witness employed by the State to testify at trial. Palmer asserted:

> Dr. Salter may offer her expert opinion that Respondent is *at risk to re-offend* based on the results of testing on the actuarial instruments and her own clinical observations, but her testimony should be limited to the risk assessment findings, i.e. risk probabilities. Any testimony that goes beyond the results of the Respondent's risk assessments invades the province of the jury and should be excluded from the jury's consideration pursuant to Iowa Rule of Evidence 5.702. State v. Dunkins, 553 N.W.2d 339 (Iowa 1996) (expert witness is not permitted to express direct opinion on guilt or innocence of defendant, which is exclusive function of finder of fact).

At the pretrial hearing on the motion, counsel for Palmer further articulated his objection to the expected opinion testimony of Dr. Salter. Counsel argued Dr. Salter should be precluded from using the "likely to engage in predatory acts constituting sexually violent offense" language of the governing statute in expressing her opinion. *See* Iowa Code § 229A.2(9). Instead, counsel asserted, Dr. Salter should be required to frame her opinion in terms of a low, moderate, or high risk to reoffend. Otherwise, counsel argued, Dr. Salter's opinion would answer the precise question to be presented to the jury. The district court denied the motion in limine.

A jury trial was held commencing on November 12, 2003. At trial, the State asked Dr. Salter:

> [W]ere you able to formulate an opinion as to a reasonable degree of professional certainty about whether the respondent's pedophilia makes it likely that he will engage in predatory acts of a sexu-

ally-violent nature if he's not confined in a secure facility?

Palmer's counsel objected on the grounds that the question "invades the province of the jury and it touches on an ultimate issue that is for the jury." The court overruled the objection, and Dr. Salter was allowed to give her opinion. She answered: "It is that he's likely to engage in predatory acts constituting sexually-violent offenses if he's not confined." Palmer's counsel objected again and moved to strike the answer, but the court denied the motion. Ultimately, the jury found Palmer to be a sexually violent predator, and the district court ordered his commitment.

Palmer appeals and raises two issues. First, he claims the district court erred by allowing Dr. Salter to testify that Palmer was "likely to engage in predatory acts constituting sexually-violent offenses if he's not confined." Second, Palmer argues the district court erred by refusing to instruct the jury that he was presumed not to be a sexually violent predator. He claims the failure to give this instruction violated his due process rights.

## II. Standard of Review

Generally, we review rulings on the admissibility of evidence for an abuse of discretion. *State v. Dullard,* 668 N.W.2d 585, 589 (Iowa 2003) (citing *State v. Jordan,* 663 N.W.2d 877, 879 (Iowa 2003)). We also review a district court's failure to give a jury instruction for an abuse of discretion. *Kiesau v. Bantz,* 686 N.W.2d 164, 171 (Iowa 2004) (citing *State v. Piper,* 663 N.W.2d 894, 914 (Iowa 2003)). "Instructional error is not reversible error unless there is prejudice. Prejudice exists when the rights of the defendant 'have been injuriously affected' or the defendant 'has suffered a miscarriage of justice.'" *State v. Hartsfield,* 681 N.W.2d 626, 633 (Iowa 2004) (citations omitted).

## III. Opinion Testimony

### A. Preservation of Error

The State asserts Palmer failed to preserve error on the district court's ruling admitting Dr. Salter's opinion testimony. The State contends an objection grounded on invasion of the province of the jury is invalid and insufficient to preserve error. The State cites *Bornn v. Madagan,* in which the court of appeals stated: "Our law refuses to sanction the objection that a qualified expert's testimony 'invades the province of the jury.' Our courts have held such objections to be 'of no force or effect.'" 414 N.W.2d 646, 648 (Iowa Ct. App.1987) (citations omitted).

Palmer contends his objection was sufficient to preserve error "because the nature of his objection was obvious: the objection followed a question and opinion that simply paraphrased the statutory definition of a sexually violent predator." *See State v. Clay,* 213 N.W.2d 473, 476–77 (Iowa 1973) ("The general rule is that *unless the reasons for an objection are obvious* one attempting to exclude evidence whether the attempted exclusion is by objection or motion has the duty to indicate the specific grounds to the court so as to alert the judge to the question raised and enable opposing counsel to take proper corrective measures to remedy the defect, if possible." (Citation omitted; emphasis added.)).

In order to decide whether Palmer's objection was sufficient to preserve error, it is helpful to examine the nature of the evidence to which he objected, as well as the rules employed to exclude it and the problems sought to be avoided by such rules. Initially, Palmer's objection that Dr. Salter's opinion would "invade the province of the jury" seems to be an invocation of the so-called ultimate issue rule.

## B. The Ultimate Issue Rule

Historically, a witness was precluded from offering an opinion on an "ultimate" issue in a case. 1 *McCormick on Evidence* § 12, at 51 (John W. Strong ed., 5th ed.1999) [hereinafter *McCormick* ]; 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 704App.100, at 704App.—4 (Joseph M. McLaughlin ed., 2d ed.2004) [hereinafter *Weinstein* ]. "The stated justification was sometimes that such testimony 'usurps the function' or 'invades the province' of the jury." 1 *McCormick* § 12, at 51; *accord Weinstein* § 704App.100, at 704App.—4. Yet, application of the rule often "led to odd verbal circumlocutions which were said not to violate the rule." Fed.R.Evid. 704 advisory committee's note. For example,

> a witness could express his estimate of the criminal responsibility of an accused in terms of sanity or insanity, but not in terms of ability to tell right from wrong or other more modern standard. And in cases of medical causation, witnesses were sometimes required to couch their opinions in cautious phrases of "might or could," rather than "did," though the result was to deprive many opinions of the positiveness to which they were entitled, accompanied by the hazard of a ruling of insufficiency to support a verdict. In other instances the rule was simply disregarded, and, as concessions to need, opinions were allowed upon such matters as intoxication, speed, handwriting, and value, although more precise coincidence with an ultimate issue would scarcely be possible.

*Id.* Moreover, in practice, the ultimate issue rule created many problems:

1. The distinction between ultimate and nonultimate facts proved impossible to draw. Although, in theory, ultimate facts are clearly distinguishable from the subsidiary facts introduced to proved them, in most actual cases the distinction may be "scarcely appreciable."

2. It was at times impossible for a witness to couch his or her testimony in anything but ultimate facts. The ultimate-facts rule here resembled the opinion rule for lay witnesses. If a witness in an automobile accident case testified that the car was speeding, objections could be raised both on the basis if the opinion rule and the ultimate-facts rule. As in the case of the opinion rule, expediency led to exceptions. Courts often allowed the witness to express an opinion on issues like speed, value, or identity if the witness would not otherwise have been able to give any testimony of value to the jury.

3. The expressed rationale for the ultimate-facts rule made little sense. Experts cannot invade the province of the jury because jurors are free to draw their own conclusions.

4. To further complicate the situation, a number of courts attempted to draw a distinction between testimony on an ultimate fact and testimony on an issue of law, allowing the former but barring the latter. Unfortunately this required separating matters of law from matters of fact, an often impossible task in this as well as other contexts.

*Weinstein* § 704App.100, at 704App.–4 to – 5 (citations omitted); *see also* 7 John Henry Wigmore, *Evidence in Trials at Common Law* § 1920, at 18 (James H. Chadbourn rev. ed. 1978) ("Th[e] phrase ["usurping the province of the jury"] is so misleading, as well as so unsound, that it should be entirely repudiated. It is a mere bit of empty rhetoric.... [The witness] *could not* usurp it if he would, because the jury may still reject his opinion

and accept some other view, and no legal power, not even the judge's order, can compel them to accept the witness' opinion against their own."). Thus, around 1942, a trend emerged to abandon the ultimate issue rule. 1 *McCormick* § 12, at 52. Our decision in *Grismore v. Consolidated Products Co.*, 232 Iowa 328, 5 N.W.2d 646 (1942), is recognized as the leading case in the establishment of this trend. 1 *McCormick* § 12, at 52 n. 8.

### C. The *Grismore* Decision

In *Grismore*, we stated that objections claiming evidence would "invade the province of the jury" or "usurp the function of the jury" "stem from a misconception of the necessity and purpose of opinion testimony." 232 Iowa at 343, 5 N.W.2d at 655. We explained:

Any such objection is not valid or tenable if the opinion called for is about a matter which is a proper subject of expert testimony. No such ... opinion can invade the province of the jury or usurp its functions even though it passes upon a controlling fact or the ultimate fact which the jury must determine. This is necessarily so.

*Id.* at 343, 5 N.W.2d at 655–56. It does not usurp the functions of the jury because the jury is not required to accept the opinion. *Id.* Accordingly, we observed:

There is no sound basis in law, reason, or common sense for decisions that a witness may state his opinion as to what "may," "might," "could," or "probably did" cause something, but may not give an opinion as to that "did," "will," or "would," cause it. The true rule is, and should be, that the witness may use such expression as voices his true state of mind on the matter, whether it be possibility, probability, or actuality. To insist

that a witness confine his testimony to an expression of possibility or probability, when his real judgment or conviction is actuality, or fact, is unfair to the witness and the jury, and unjust to the party offering the testimony.

*Id.* at 348, 5 N.W.2d at 657.

While we abandoned the ultimate issue rule and the verbal circumlocutions it entailed, we were careful to caution that there were still limits on the admissibility of opinion testimony:

It should be received only as to such matters as are the proper subject of expert testimony. No witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible or irresponsible, or that a person was negligent or not negligent, or that he had capacity to execute a will or deed, or like instrument, or ... whether [probable cause existed]. But the reason is that such matters are not subjects of opinion testimony. They are mixed questions of law and fact. When a standard, or a measure, or a capacity has been fixed by law, no witness whether expert or nonexpert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct, in question, measures up to that standard. On that question the court must instruct the jury as to the law, and the jury must draw its own conclusion from the evidence.

*Id.* at 361, 5 N.W.2d at 663. For forty years, we continued to apply the *Grismore* prohibition against opinion testimony on issues of law and mixed law and fact in a variety of contexts.[1] Then, in 1983, we adopted the Iowa Rules of Evidence.

---

1.  In *State v. Moses,* we summarized:

The *Grismore* rule has since been applied in a variety of cases under widely differing

## D. Iowa Rules of Evidence

Iowa Rule of Evidence 5.704, which is identical to its federal counterpart and consistent with our approach in *Grismore*, provides: "Testimony in the form or an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Iowa R. Evid. 5.704 (emphasis added). That is, opinion testimony is not inadmissible because it embraces the ultimate issue in the case, but it must still be admissible under the other rules of evidence. Importantly, the opinion must be helpful to the trier of fact under rules 5.701 and 5.702. Thus, a witness cannot opine on a legal conclusion or whether the facts of the case meet a given legal standard. Iowa R. Evid. 5.704 advisory committee comment. Such an opinion would be of no value to the jury. In most cases, the jurors are fully capable of applying the facts of the case to the law provided to them by the trial judge. *But see Weinstein* § 704.04[2][a], at 704—13 to —14 (stating that such an opinion may be admissible in a case involving a specialized industry or complex area of law).

The most troubling problem with questions and opinions couched in terms of legal standards and conclusions, and the primary underlying reason they are often inadmissible, is that they "may be misunderstood by the witness and the jury if they do not know the law's definition of" the legal standards used. 1 *McCormick* § 12, at 55; *accord Weinstein* § 704.04[2][b], at 704—14 ("Another reason for excluding opinion testimony in the form of a legal conclusion is the danger of confusion that arises because legal terminology generally has a different meaning to lay persons than lawyers."); *see also Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir.1985) ("The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury."). Thus, the problem with legal conclusions is not that the opinion "invades the province of the jury," but rather that it "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Id.* (quoting *Fed. Aviation Admin. v. Landy,* 705 F.2d 624, 632 (2d Cir.1983) (additional cita-

circumstances. *E.g., Kooyman v. Farm Bureau Mutual Insurance Co.,* 315 N.W.2d 30, 37 (Iowa 1982) (witness not permitted to say defendant's conduct amounted to bad faith); *State v. Nimmo,* 247 N.W.2d 228, 230 (Iowa 1976) (witness not permitted to say that marijuana found on defendant "would be quite a bit more than a person would have on hand for personal use"); *State v. Swartz,* 244 N.W.2d 553, 555 (Iowa 1976) (witness not permitted to say that "marijuana was in the [defendant's] home to be sold or delivered by defendant and his wife" because it conveys conclusion of legal guilt); *State v. Ogg,* 243 N.W.2d 620, 621 (Iowa 1976) (witness not permitted to say "forty-six tablets of LSD far exceeds what one might possess for personal use" because statement expressed opinion of guilt); *Speed v. State,* 240 N.W.2d 901, 911 (Iowa 1976) (witness could testify that physician failed to use ordinary skill, but could not testify that doctor was negligent); *State v. Johnson,* 224 N.W.2d 617, 622 (1974) (expert on "tilltapping" not allowed to say crime of tilltapping had occurred); *State v. Galloway,* 167 N.W.2d 89, 94 (Iowa 1969) (polygraph expert could testify to defendant's lack of veracity but was not permitted to say that defendant was involved in the shooting); *M. Capp Mfg. Co. v. Hartman,* 260 Iowa 24, 28–29, 148 N.W.2d 465, 468 (1967) (building inspector prohibited from testifying that the building's structure violated zoning ordinance); *In re Ransom's Estate,* 244 Iowa 343, 371–72, 57 N.W.2d 89, 104–05 (1953) (witness not permitted to say whether testator was competent to make will because the inquiry involved a mixed question of law and fact and was a direct inquiry as to the testator's testamentary capacity). 320 N.W.2d 581, 588 (Iowa 1982).

tions omitted)). If there is a danger of the jury misunderstanding the legal terms used, not only may the opinion be excludable under rules 5.701 and 5.702 as being not helpful to the jury, but it may also be excludable under rule 5.403 if the probative value of the opinion is substantially outweighed by the danger of misleading the jury. *See* Fed.R.Evid. 704 advisory committee's note (stating that rules 701, 702, and 403 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach" and "stand ready to exclude opinions phrased in terms of inadequately explored legal criteria").

■ Whether an opinion couched in legal terms is excludable on this basis depends on "whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Torres,* 758 F.2d at 151 (citing *United States v. Hearst,* 563 F.2d 1331, 1351 (9th Cir.1977)); *accord Weinstein* § 704.04[2][b], at 704—14 ("Opinion testimony using legal terms may be admissible if there is no conflict between the legal definition and the meaning of the term in common usage."); *see also* James A. Adams & Joseph P. Weeg, *Iowa Practice: Evidence* § 5.704.2, at 580 (2004) [hereinafter Adams & Weeg] ("[T]estimony which uses terms having their ordinary meaning and readily understandable is more likely to assist the jury than confuse or mislead."). Conversely, "when the popular meaning is roughly the same as the legal meaning," the opinion is not excludable merely because it contains legal terms. 1 *McCormick* § 12, at 56.

Generally, the best resolution for this problem is for the questioner to break down the legal terms into its factual elements. For example, "the question 'Did T have the capacity to make a will?' would be excludable" because "capacity" is a legal term with a more precise, specialized legal meaning than the lay understanding of that term. *Id.* However, if the questioner simply asks, " 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?,' " the danger of confusion is avoided. *Id.* That is, "the proponent of opinion testimony may enhance the likelihood of its admissibility by carefully exploring the bases for the opinion and by phasing his [or her] examination in factual terms." Adams & Weeg § 5.704.2, at 579.

### E. Dr. Salter's Opinion

■ As previously noted, the question posed to Dr. Salter in this case was: "[W]ere you able to formulate an opinion as to a reasonable degree of professional certainty about whether the respondent's pedophilia makes it likely that he will engage in predatory acts of a sexually-violent nature if he's not confined in a secure facility?" This question essentially asked whether Palmer met one of the elements of the statutory definition of "sexually violent predator."

The Sexually Violent Predator Act (SVPA) defines "sexually violent predator" as

> a person who has been convicted of or charged with a sexually violent offense and who suffers from an mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

Iowa Code § 229A.2(11). The definition can be broken down into three main elements: (1) commission of a "sexually violent offense," (2) "mental abnormality," and (3) "makes the person likely to engage in predatory acts constituting sexually vio-

lent offenses if not confined in a secure facility." *Id.* In this case, there was no dispute that Palmer had committed a "sexually violent offense" and that he had a "mental abnormality" as defined by the statute. The third element of the definition was the fighting issue at trial.

The third element of the definition contains within it three statutorily defined phrases: (1) "likely to engage in predatory acts of violence," *see id.* § 229A.2(4) (defining the phrase as "the person more likely than not will engage in acts of a sexually violent nature"), (2) "predatory," *see id.* § 229A.2(6) (defining the term as "acts directed toward a person with whom a relationship has been established or promoted for the primary purpose of victimization"), and (3) "sexually violent offense," *see id.* § 229A.2(10) (defining the phrase as any violation of chapter 709 or various other sexually motivated offenses). Under rule 5.704, the question propounded to Dr. Salter was not objectionable solely because it embraced an ultimate issue in the case. Thus, to the extent that the objection by Palmer raised this point, it was properly overruled by the district court. Yet, upon close examination of the complete record, Palmer's objection was that the witness was being asked to render an opinion by utilizing the statutory standard of "likely to engage in predatory acts constituting sexually violent offenses." We must therefore consider whether this specific ground makes the testimony sought by the question "otherwise" inadmissible.

■ We have previously noted the problem presented by questions that convey a witness's undefined legal standard. Yet, the statutory definition of "likely" is "more likely than not." Iowa Code § 229A.2(4). This definition is essentially the same as the common usage of the term. *See Hearst*, 563 F.2d at 1351 (stating that testimony containing a legal conclusion is not

inadmissible where "[t]he average layman would understand those terms and ascribe to them essentially the same meaning intended"). When, as here, the popular meaning is nearly the same as the legal meaning, there is no concern that the legal term results in an opinion of law that could be incorrectly understood by the jury or the witness. *Torres*, 758 F.2d at 151; 1 *McCormick* § 12, at 56. Moreover, there was an abundance of testimony by Dr. Salter concerning the meaning of the term "likely." Under these circumstances, Dr. Salter's use of the statutorily defined term "likely" did not render her opinion inadmissible. *See Weinstein* § 704.04[2][b], at 704—14 ("Opinion testimony using legal terms may be admissible if there is no conflict between the legal definition and the meaning of the term in common usage.").

However, the same rationale does not apply to the two remaining statutory terms used in the question posed to Dr. Salter, "predatory" and "sexual violent offense." These statutorily defined terms have "a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Torres*, 758 F.2d at 151. Thus, the question asked and the opinion given created a danger of misleading the jury—that is, of Dr. Salter and the jury not being "on the same page" with respect to the meanings of those terms. Accordingly, the State should have been required to break down the question into its factual elements.

Nevertheless, we have previously explained:

Because the function of an objection is to invoke a rule of evidence to regulate admission of proof at trial, it is sufficient if it alerts the trial court to the principle sought to be invoked. 'In determining the formal sufficiency of an objection, it is enough if the substance of the defec-

tive feature of the evidence offered is made clear by any choice of language. Care must be taken that the objection strike at the very heart of the infirmity.' *State v. Nimmo*, 247 N.W.2d 228, 231 (Iowa 1976) (quoting Mason Ladd, *Objections, Motions and Foundation Testimony*, 43 Cornell L.Q. 543, 551 (1958)).

Palmer's objection did not address the State's use of these two distinct legal terms in its question as ground for error and did not "alert[] the trial court to the principle sought to be invoked." *Id.* " 'Care must be taken that the objection strike at the very heart of the infirmity.' " *Id.* (citation omitted). The proper objection would have been that the question called for a legal conclusion, for an opinion that was not the proper subject of expert testimony, *Schlichte v. Franklin Troy Trucks*, 265 N.W.2d 725, 730 (Iowa 1978), or for an opinion whose probative value would be substantially outweighed by the danger of misleading the jury, Iowa R. Evid. 5.403. More importantly, Palmer was required to identify the specific legal terms that rendered the question objectionable. We conclude the objection was insufficient to preserve error in this case.

▆ Moreover, even assuming that error was preserved, the result would be the same because no prejudice resulted from Dr. Salter's opinion. "The existence of error at trial does not itself warrant corrective action on appeal. Rather, under the 'harmless error' rule, the determinative factor in ascertaining whether remedial measures are warranted is the prejudicial impact of the error." Adams & Weeg § 5.103.14, at 54. No prejudice results from erroneous admission of evidence on an issue that is undisputed. *Id.* at 59 (citing *Oakes v. Peter Pan Bakers, Inc.*, 258 Iowa 447, 453, 138 N.W.2d 93, 97 (1965)). Palmer never asserted that any future acts he might commit would not meet the legal definition of "predatory" or "sexually violent offenses." Rather, his argument was limited to challenging the likelihood that he would reoffend. Thus, the problematic part of Dr. Salter's opinion went to what amounted to an undisputed issue in the case and resulted in no prejudice. *Id.*

## IV. Jury Instruction

▆ Palmer's second claim is that the district court erred in refusing to instruct the jury that he was presumed not to be a sexually violent predator. Even in criminal cases, "the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution." *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640, 643 (1979). "[T]he Sexually Violent Predator Act is civil in nature, not criminal." *In re Detention of Garren*, 620 N.W.2d 275, 283 (Iowa 2000). The district court instructed the jury that the State had the burden to prove Palmer satisfied all of the elements of the definition of sexually violent predator beyond a reasonable doubt. This instruction is all he was entitled to, and he was only entitled to the beyond-a-reasonable-doubt standard because the legislature has chosen to adopt this standard in the SVPA. *See* Iowa Code § 229A.7(4). Because the SVPA is a civil statute, the present action should be treated like a civil case. Just as the defendant in a tort suit would not be entitled to a jury instruction that he is presumed not to be a tortfeasor, Palmer is not entitled to an instruction that he is presumed not to be a sexually violent predator. *See In re Wyatt*, 428 Mass. 347, 701 N.E.2d 337, 342 n. 10 (1998) ("[A]n instruction on the presumption of non-sexual dangerousness is not constitutionally required in a civil commitment proceeding . . . ."); *see also In re Detention of Seewalker*, 689 N.W.2d 705,

707 (Iowa Ct.App.2004) ("[W]e conclude Seewalker was not entitled to a 'presumption-of-non-predator' instruction."); *In re Care & Treatment of Wadleigh*, 145 S.W.3d 434, 440 (Mo.Ct.App.2004) (finding no error in trial court's refusal to give presumption-of-innocence instruction); *In re Detention of Aqui*, 84 Wash.App. 88, 929 P.2d 436, 445 (1996) (holding the respondent in a civil commitment proceeding is not "entitled to an instruction that he is presumed not to be a sexual predator"), *abrogated on other grounds by In re Detention of Henrickson*, 140 Wash.2d 686, 2 P.3d 473 (2000); *cf. Addington v. Texas*, 441 U.S. 418, 431, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323, 334 (1979) (holding that due process does not require application of the beyond-a-reasonable-doubt standard in civil commitment proceedings). Although such an instruction would not necessarily be improper, it is not required by either the federal or the state constitution. Nor does the statute itself require such an instruction. Accordingly, the district court did not abuse its discretion in refusing to instruct the jury that Palmer was presumed not to be a sexually violent predator.

### V.  Conclusion

We conclude the district court did not abuse its discretion in admitting Dr. Salter's opinion testimony and refusing to give Palmer's requested instruction. Therefore, we affirm the judgment of the district court.

**AFFIRMED.**