## IN THE COURT OF APPEALS OF IOWA

No. 13-0803
Filed July 30, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KOREY ALLEN JURGENA,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, District Associate Judge.

Korey Allen Jurgena appeals his conviction for two counts of indecent exposure. **AFFIRMED.**

Patrick W. O'Bryan, of O'Bryan Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Sheryl Soich, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Steven D. Tynan, Assistant County Attorney, for appellee.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**BOWER, J.**

Korey Allen Jurgena appeals his convictions for two counts of indecent exposure. Jurgena claims the district court erred by refusing to allow him to ask the victim certain questions at trial, by refusing to allow introduction of a video of his interview with police, and by denying his motion for new trial. He also claims the jury verdict is not supported by substantial evidence. We conclude Jurgena has waived his first claim regarding his inability to question the victim and also conclude the district court did not abuse its discretion in excluding the video evidence. Further, this is not the rare and exceptional case in which the district court abused its discretion in denying Jurgena's motion for new trial. Finally, we conclude the State produced sufficient evidence to support the jury verdict. We therefore affirm the district court.

## I.       Background Facts and Proceedings

Korey Jurgena was charged with two counts of indecent exposure after twice exposing himself to a teenage girl at a mall. At noon on Saturday, June 2, 2012, Jurgena was in the parking lot of a shopping mall. At the same time, the victim was at the same mall with her grandmother. Upon returning to her vehicle to retrieve a cell phone, the victim observed Jurgena as he walked past her car. As he did so, he lowered his pants, exposing himself through sheer underwear. The victim returned to the mall, and her grandmother asked her to go back to the car to retrieve a wallet. The victim asked to stay in the mall because there was a "weird person" outside. Eventually the victim headed back to her car, and upon exiting the mall, the victim observed Jurgena for a second time. Once again, Jurgena lowered his pants, exposing himself through his sheer underwear. Upon

returning to the mall, the victim informed her grandmother of what had occurred. The grandmother insisted they attempt to identify Jurgena and report the incident to police. As they exited the mall, the victim saw Jurgena again, this time clothed, and pointed him out to her grandmother. They followed Jurgena in their car, recording his license plate number and proceeding to the police station.

The police contacted Jurgena who appeared at the police station for questioning. While he was there, the victim positively identified Jurgena by the clothes he was wearing. Jurgena told the police and jury he had recently lost a significant amount of weight, was wearing oversized pants, and normally wore a belt. However, as the belt pinched him while driving, he had removed the belt to drive to the mall and did not put the belt back on when he exited his vehicle.

Before trial, the State filed a motion in limine, seeking to prevent Jurgena from asking the victim whether she thought Jurgena pulled his pants down intentionally or accidentally. The district court granted the motion, finding the victim's opinion on the matter was irrelevant and inadmissible as it was speculative and not based upon the victim's personal knowledge or observation. Jurgena also asked to introduce a video of his questioning by police, during which he claimed his pants fell down accidentally. The district court declined to allow the video to be played as it was a prior consistent statement with no allegation of recent fabrication against Jurgena.

Jurgena was found guilty of both counts. On count one he was sentenced to one year in the county jail with all but thirty days suspended. A no-contact order was also entered, and Jurgena was placed on two years of supervised probation. Jurgena was ordered to participate in a sex offender treatment

program and register as a sex offender for ten years. Jurgena was also placed on parole supervision for a period of ten years. The sentence on count two, of one year in the county jail, was fully suspended and ordered to be served consecutively to count one.

## II.      Standard of Review

The district court's evidentiary rulings are reviewed for an abuse of discretion. *State v. Richards*, 809 N.W.2d 80, 89 (Iowa 2012). We will reverse the district court only when the evidentiary rulings are based upon untenable or clearly unreasonable grounds. *Id.*

A district court may grant a new trial when the verdict is contrary to the weight of the evidence. *State v. Adney*, 639 N.W.2d 246, 252 (Iowa Ct. App. 2001). This standard requires the district court to determine whether "a greater amount of credible evidence supports one side of an issue or cause than the other." *Id.* (quoting *State v. Ellis,* 578 N.W.2d 655, 658 (Iowa 1998)). On appeal, our review "is limited to a review of the exercise of discretion by the trial court, not the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). Accordingly, we review Jergena's claim for an abuse of trial court discretion.

Jurgena's sufficiency of the evidence challenge is reviewed for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 614–15 (Iowa 2012). We view the evidence in the light most favorable to the verdict. *Id.* at 615.

## III. Discussion

### A. Motion in Limine

Jurgena claims the district court erred by prohibiting him from asking the victim her opinion of whether his pants fell down accidentally. The victim's statements on this issue were allegedly inconsistent, and on at least one occasion, she stated, out-of-court, she believed the incident was accidental.[1] The district court determined the proposed evidence was irrelevant, and the victim had no personal knowledge or opinion of Jurgena's intent. *See* Iowa R. Evid. 5.602, 5.701.

Lay witnesses may give opinion testimony when the opinions or inferences are: "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Iowa R. Evid. 5.701.

Indecent exposure requires a specific intent to arouse or gratify the sexual desire of any person, and this intent can be inferred from an accused's conduct, remarks, and all surrounding circumstances. *State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008) (citing *State v. Isaac*, 756 N.W.2d 817, 820 (Iowa 2008) (noting "our statute requires [a sexual motivation] at the time of exposure to the viewer")). In cases involving specific intent crimes, a fine line exists between opinions that improperly express guilt or innocence and those that properly compare or characterize the defendant's conduct based on the facts of the case

---

[1] The victim is friends with Jurgena's daughter. After the incident, Jurgena's daughter contacted the victim and spoke with her about the event. The victim, who did not want to go to the police in the first place, apologized both to Jurgena's daughter and, appearing at his workplace at a later time, to Jurgena himself. At times, she expressed the opinion she believed Jurgena's act was not intentional.

so as to assist the jury in understanding the evidence or to determine a fact in issue. *State v. Dinkins*, 553 N.W.2d 339, 341 (Iowa Ct. App. 1996) (citing *State v. Olsen,* 315 N.W.2d 1, 7 (Iowa 1982)). The manner in which the opinion is expressed will often determine on which side of the fine line the opinion testimony falls. *Id.* at 342. Pursuant to Iowa Rule of Evidence 5.704, testimony in the form of an opinion or inference otherwise admissible is not simply objectionable because it embraces an ultimate issue to be decided by the trier of fact.

If the witness confines her opinion to a rational inference from her observations, the opinion is admissible on the issue of specific intent, one element of the charged offense. *See State v. Smith,* 522 N.W.2d 591, 594 (Iowa 1994) (allowing opinion testimony on one element of the crime); *State v. Ely*, 690 N.W.2d 698 (Iowa Ct. App. 2004) (allowing opinion testimony defendant was pictured in ATM photographs at time thefts occurred); *compare State v. Murphy,* 451 N.W.2d 154, 156 (Iowa 1990) (allowing opinion testimony that OWI defendant was intoxicated) *with State v. Maurer*, 409 N.W.2d 196, 198 (Iowa Ct. App. 1987) (finding testimony that beyond all reasonable doubt defendant operated a motor vehicle on a public highway while intoxicated was inadmissible). Because the witness observed Jurgena's conduct, remarks, and the circumstances surrounding his exposure, she could potentially give an opinion based upon observed facts if it is helpful to the jury in determining intent.

Although the witness's opinion is not excludable simply because it embraces an ultimate issue in the case, such opinion may still be excluded under the other rules of evidence. *In re Det. of Palmer*, 691 N.W.2d 413, 419 (Iowa

2005). First, the witness cannot express an opinion on Jurgena's guilt or innocence. *State v. Myers*, 382 N.W.2d 91, 93 (Iowa 1986). Second, "[her] opinion must be helpful to the trier of fact under rules 5.701 and 5.702. Thus, [she] cannot opine on a legal conclusion or whether the facts of the case meet a given legal standard." *Palmer*, 691 N.W.2d at 419 (citing Iowa Rule of Evidence 5.704 advisory committee comment). The primary reason witnesses' opinions couched in terms of legal standards and conclusions are inadmissible is because legal terminology generally has a different meaning to laypersons than lawyers. *Id.* If the terms used by the witness are readily understandable and have a common meaning, then her testimony is more likely to assist the jury than confuse or mislead. *Id.* at 420 (citing James A. Adams & Joseph P. Weeg, *Iowa Practice: Evidence* § 5.704.2, at 580 (2004)); *see State v. Moses*, 320 N.W.2d 581, 588 (Iowa 1982) (finding State experts may testify on issue of an accused's insanity and diminished responsibility because insanity is a defense to murder, which is distinguishable from cases prohibiting testimony directed towards establishing an element of the crime charged).

Jurgena claims the victim, if asked, would have testified she believed the exposure was accidental. Indecent exposure, as statutorily expressed, is devoid of the term "accident"; there is no separate, distinct, or specialized meaning of "accident" to which the witness could be referring. The term "accident" in Jurgena's proposed line of questioning is a readily understandable term with a common meaning and is more likely to assist the trier of fact in understanding her testimony. *See Palmer*, 691 N.W.2d at 420. For these reasons, the witness's desired testimony, if confined to a rational inference from her observations, may

be kept within the fine line distinguishing opinion testimony assisting the jury from opinion testimony conveying a conclusion of guilt or innocence. Thus, Jurgena eliciting the lay opinion that the witness perceived the events as an accident is not necessarily improper.

In addition, the testimony may have been admissible as a prior inconsistent statement if the statement was inconsistent with her trial testimony. *Brooks v. Holtz*, 661 N.W.2d 526, 530–31 (Iowa 2003) (finding a prior inconsistent out-of-court statement offered for impeachment purposes falls outside of the definition of hearsay); *State v. Bales*, 102 N.W.2d 162, 165 (Iowa 1960) (holding it is not competent to prove what a prosecuting witness has said subsequent to the alleged offense except for the purpose of impeaching him).

However, we cannot conclude the proposed testimony fits within any of these rules due to the record we currently have on appeal. The record does not contain the deposition testimony of the witness nor an offer of proof of any other out-of-court statement. On the record before us, we cannot determine whether the opinions of the witness were rationally based on her perception or whether they would be helpful to the jury. We likewise have no ability to determine whether or when the statements were inconsistent. *See State v. Mudra*, 532 N.W.2d 765, 767 (Iowa 1995) ("It is a defendant's obligation to provide this court with a record affirmatively disclosing the error relied upon. We conclude that, by voluntarily failing to provide such a record, [defendant] has waived error on his claim.").

As in *Mudra*, Jurgena has failed to provide a sufficient record on appeal to allow us to determine the merits of his claim. *See Whitley v. C.R. Pharmacy*

*Serv., Inc.*, 816 N.W.2d 378, 390 (Iowa 2012) ("To properly admit a lay witness's testimony, a sufficient factual foundation must be established showing the witness's opinion is based on firsthand knowledge and personal knowledge of facts to which the observed facts are being compared."); *compare State v. Cromer*, 765 N.W.2d 1, 10–11 (Iowa 2009) (citing Iowa Rule of Evidence 5.701 and finding a tape recording of a telephone conversation between the accused and the witness contained improper lay opinions because the witness had no memory of the events that took place at the motel where the alleged assault occurred, so her declaration that a rape had occurred was not based on her personal knowledge and thus should not have been admitted), *with State v. Heinz*, 275 N.W. 10, 17 (Iowa 1937) (finding it permissible for a police chief testifying in a murder trial to state his conclusion that the defendant signed the written confession voluntarily after relating circumstances leading up to the signature). We conclude Jurgena, by failing to provide a record of the statements, "has waived error on his claim." *Mudra*, 532 N.W.2d at 767.

### B. Video Recording of Jurgena's Interview

Jurgena also sought to introduce a video recording of his own questioning by police. During the interview, Jurgena explained his pants had accidently fallen down on two separate occasions. The offer of the video was an attempt to bolster his testimony through a prior consistent statement. Jurgena does not cite to a rule of evidence that would allow for admission of the video recording and simply relies upon *State v. Madsen*, 813 N.W.2d 714, 721–22 (Iowa 2012), to support the proposition that we generally favor introduction of recorded

interrogations. *Madsen* does not suggest a general policy of allowing video recorded interviews that are otherwise inadmissible.

The video recording was offered by Jurgena himself and is not, as claimed, an admission by a party opponent. Iowa R. Evid. 5.801(d)(2). Nor is the recording admissible as a prior consistent statement under rule 5.801(d)(1)(B) as it was not offered to rebut a charge of recent fabrication, improper influence, or motive. Absent those allegations, there are no grounds for Jurgena to use the video recording to bolster his in-court testimony. Accordingly, the district court did not abuse its discretion in excluding this evidence.

### C.    Motion for New Trial

Jurgena's motion for new trial claimed the "greater weight of credible evidence merely shows [he] did not have a belt on and had to continually hold up his pants." To be guilty of the crime of indecent exposure, the defendant must have exposed his pubes or genitals to someone who was not his spouse for the purpose of arousing or satisfying the sexual desires of either party, and the defendant must know or reasonably should know the act is offensive to the viewer. Iowa Code § 709.9 (2011). First, Jurgena claims the State failed to produce the greater weight of the evidence that the act was done to arouse the sexual desires of either party.

Trial courts have wide discretion in resolving motions for new trial. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). The district court exercises this discretion sparingly and with caution and grants a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (recognizing a court's failure to exercise discretion sparingly "would lessen the

role of the jury as the principal trier of the facts and would enable the trial court to disregard at will the jury's verdict"). In ruling on a motion for new trial, a district court weighs the evidence and considers the credibility of the witnesses. *Id.* at 658. "If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted." *Id.* at 658-59.

The district court, using the weight-of-the-evidence standard, rejected Jurgena's claims the two exposures were accidental and were not done with the intent to arouse his sexual desires. The court carefully evaluated the evidence, stating: The victim did not observe Jurgena's

> pants fall down, followed by him pulling his pants back up. She saw his hands on his pants pulling his pants down to expose his penis and then pulling them back up . . . . [S]he was very clear and consistent about what occurred, particularly the motion she observed before, during, and after the exposure of [Jurgena's] penis to her.
> Also, this happened twice to the same victim within a short period of time, evidencing that this was not an accident, but rather an intentional, purposeful exposure to a young, pretty girl . . . . [O]nce [the victim and her grandmother] were in their vehicle following him, [Jurgena] was evasive in his driving and tried to conceal himself when they pulled beside his vehicle.
> And further, there is little reason for a forty-year-old man to wear see-through underwear and loose fitting shorts to a mall, other than in preparation for an opportunity to arouse one's sexual desires through indecent exposure. If he in fact does always remove his belt when he drives, one would imagine that his practice would be to put his belt back on when he exits his vehicle, which apparently is what he did on his second trip to the mall and to the police station.

The district court concluded "the weight of the evidence shows that [Jurgena's] intention at the time of these exposures was to arouse his sexual desires." We find no abuse of discretion in the court's reasoning.

Second, a new trial is not warranted based on Jurgena's claim he could not have known the exposure would be offensive because he "was not even aware that anyone had seen his shorts fall down until after he was called to the police station." In *Jorgensen*, 758 N.W.2d at 836, our supreme court noted nothing in section 709.9 requires "the actor be aware or have knowledge of the specific individual to whom he is exposing himself." *Id.* Under *Jorgensen,* Jurgena should have known any viewer would be offended.

In conclusion, this is not the rare and exceptional case in which the district court abused its discretion in denying Jurgena's motion for new trial.

### D. Sufficiency of the Evidence

Jurgena claims that even when the evidence is considered in the light most favorable to the State, the evidence is insufficient to prove sexual motivation or intent and insufficient to prove he "knows or reasonably should know that the act is offensive to the viewer." *See* Iowa Code § 709.9.

The jury's verdict is binding upon a reviewing court unless there is an absence of substantial evidence in the record to sustain it. *Fenske v. State*, 592 N.W.2d 333, 343 (Iowa 1999). The jury is "free to reject certain evidence and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). "Substantial evidence is evidence upon which a rational finder of fact could find a defendant guilty beyond a reasonable doubt." *State v. Rohm,* 609 N.W.2d 504, 509 (Iowa 2000).

Jurgena testified he was wearing ill-fitting pants and sheer underwear. A reasonable juror could conclude that such a person would have understood the danger of his pants falling down and exposing himself and also "reasonably

should know that the act is offensive to the viewer." A reasonable juror could also conclude Jurgena's two separate acts were done intentionally for the purpose of sexual gratification or arousal, especially when the victim testified Jurgena had his hands through the loops of his pants at all times, which is inconsistent with two separate accidental exposures. The jury was charged with reaching conclusions as to Jurgena's mental state, for which there could be no direct evidence. We note the credibility of witnesses is for the factfinder to decide except for those rare circumstances where the testimony is absurd, impossible, or self-contradictory. *State v. Kostman*, 585 N.W.2d 209, 211 (Iowa 1989). Because substantial evidence supports the jury's determination, we affirm the verdict. Finding no error in the rulings of the district court, we affirm.

**AFFIRMED.**