# IN THE COURT OF APPEALS OF IOWA

No. 14-0272
Filed March 25, 2015

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**RHONDA RENEE MCGEE,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon (trial) and E. Richard Meadows Jr. (sentencing), Judges.

Rhonda McGee appeals from the guilty verdict and sentence on a charge of conspiracy to manufacture methamphetamine. **AFFIRMED.**

J. Keith Rigg, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant Attorney General, Lisa Holl, County Attorney, and Ashley Corkery, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

Rhonda McGee appeals from the guilty verdict and sentence on a charge of conspiracy to manufacture more than five grams of methamphetamine in violation of Iowa Code sections 124.401(1)(b)(7) and 706.1 (2013).

### I. Factual and Procedural Background

Sergeant Mark Milligan was an investigator for the Southeast Iowa Interagency Drug Task Force from 2010 to 2012. He primarily investigated methamphetamine cases and worked on several cases involving conspiracies to manufacture. Rhonda McGee came under his scrutiny based on information received throughout his investigations. Milligan began to search for patterns in McGee's purchasing history in the National Precursor Log Exchange (NPLEx) system, which tracks individuals' purchases of pseudoephedrine, commonly used to manufacture methamphetamine.

Based on his review of McGee's purchasing records, he suspected she was involved in a larger conspiracy to manufacture methamphetamine with numerous other pseudoephedrine buyers. He began to conduct interviews with McGee and her suspected coconspirators. McGee denied any criminal activity and maintained that she purchased over-the-counter medications containing pseudoephedrine to treat her allergies.

Through Milligan's investigation, he came to believe approximately twenty people were involved in the conspiracy, purchasing pseudoephedrine and

supplying it to McGee who would in turn use it manufacture methamphetamine. McGee was charged with conspiracy to manufacture.[1]

At trial, Milligan testified about his investigation. During his testimony, he described some of his interviews with McGee's alleged coconspirators and some statements two of those alleged coconspirators—Samantha McDonald and Rebecca Pinegar—made to him. He also testified that, in his opinion, the acts of McGee and her alleged coconspirators were consistent with those of other members of similar conspiracies and he believed McGee to be engaged in a conspiracy. He testified that the NPLEx records showed McGee regularly purchased pseudoephedrine at the same time and place as other purchasers allegedly involved in the conspiracy. He offered testimony as to the amount of methamphetamine that could be produced from an amount of pseudoephedrine. McGee's trial counsel objected to most of these aspects of his testimony, but the objections were overruled.

The jury returned a guilty verdict and answered the verdict interrogatory as to quantity indicating more than five grams. McGee was sentenced accordingly. She now appeals.

---

[1] Iowa Code section 124.401(1) provides:
> [I]t is unlawful for any person to manufacture . . . a controlled substance, a counterfeit substance, or a simulated controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture . . . a controlled substance, a counterfeit substance, or a simulated controlled substance.

Iowa Code section 706.1 provides, "A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime . . . , the person . . . agrees with another that they or one or more of them will engage in conduct constituting the crime . . . ."

**II. Standard of Review**

McGee asserts the district court erred in its ruling permitting Milligan to testify to statements made by alleged coconspirators during his investigatory interviews. McGee claims the statements were impermissible hearsay. We review a district court's hearsay determinations for correction of errors at law. *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003).

McGee next asserts the district court abused its discretion in admitting Milligan's testimony as to his opinion on the existence of a conspiracy. We review challenges to the admissibility of evidence for an abuse of discretion. *State v. Price*, 692 N.W.2d 1, 3 (Iowa 2005). An abuse of discretion occurs when a court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *See State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008).

Lastly, McGee asserts she was prejudiced by the ineffective assistance of her trial counsel insofar as counsel failed to properly handle the issue of evidence in the record regarding the quantity of methamphetamine allegedly manufactured. We review ineffective-assistance-of-counsel claims de novo. *King v. State*, 797 N.W.2d 565, 570 (Iowa 2011).

**III. Discussion**

A. Hearsay—Statements by Alleged Coconspirators

*1. Admissibility.* McGee's first claim concerns Milligan's testimony regarding statements made by alleged coconspirators to Milligan during interviews. He testified over defense counsel's objection:

> [B]oth Samantha McDonald and Rebecca Pinegar stated that they had been to the store. . . . [T]hey stated that they had been to the store with Rhonda McGee, that they had purchased pseudoephedrine with Rhonda McGee while at the store, and then in turn provided that pseudoephedrine to Miss McGee. And Miss Pinegar even stated to the extent that she received methamphetamine from Rhonda McGee for the pseudoephedrine that she had purchased.

McGee argues the district court erred in admitting this testimony, which she asserts is inadmissible hearsay. Both Pinegar and McDonald testified at trial—Pinegar as a State's witness and McDonald as a defense witness.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted," and it is inadmissible. Iowa R. Evid. 5.801(c), 5.802. However, some statements fall outside the definition of hearsay and may be admissible, including "statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy." *Id.* 5.801(d)(2)(E). Additionally, a statement is not hearsay when it is not offered to establish the truth of the matter asserted but instead offered for some other permissible purpose. *See Dullard*, 668 N.W.2d at 589–90.

The district court admitted Milligan's testimony, describing McDonald's and Pinegar's statements as "statements by coconspirators during the course and in furtherance of the conspiracy." However, McGee argues—and the State concedes—that the statements at issue were not made in furtherance of the conspiracy as the rule requires. Both McDonald and Pinegar made their statements while in custody and with the knowledge that Milligan was a law enforcement officer questioning them about their involvement in a conspiracy. Their statements clearly did not serve the purpose of furthering the alleged

conspiracy. Therefore, the district court erred in admitting the out-of-court statements on that basis.

The State contends the testimony was nevertheless admissible because the statements were not offered to establish the truth of the matter asserted. The State argues as the prosecutor argued at trial: the testimony was offered to demonstrate "the course of Sergeant Milligan's investigation and . . . how he was able to connect the coconspirators that he identified in this case." In other words, the prosecutor offered Milligan's testimony as to McDonald's and Pinegar's statements merely to demonstrate the effect it had on Milligan as the listener.

We must consider "whether the statement is truly relevant to the purpose for which it is being offered, or whether the statement is merely an attempt to put before the fact finder inadmissible evidence." *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990). Our supreme court has held a testifying officer may explain a course of action

> by stating that he did so "upon information received" and this of course will not be objectionable hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay.

*State v. Elliot*, 806 N.W.2d 660, 668 (Iowa 2011) (citing *State v. Doughty*, 359 N.W.2d 439, 442 (Iowa 1984)).

In this case, Milligan's recounting of specific incriminating statements made by McDonald and Pinegar go beyond what was necessary to expound upon the course of his investigation. The jury was so likely to construe that testimony as evidence of the facts asserted that it was error for the district court to admit the evidence as though it were submitted not for its truth.

Milligan's testimony contained impermissible hearsay statements. The statements were not coconspirator statements as contemplated by rule 5.801(d)(2)(E). Their admission was not necessary to show their effect upon the listener, and the risk of jury misuse of the testimony is high. The district court erred in failing to exclude the statements.

*2. Prejudice.* Although we conclude the district court erred by admitting impermissible hearsay, the error does not require reversal "if the defendant suffered no prejudice or harm from the admission of inadmissible testimony." *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003). We begin by presuming the error was prejudicial. *Elliott*, 806 N.W.2d at 669. The presumption is overcome if "the record shows the hearsay evidence did not affect the jury's finding of guilt." *Id.* We look to the record to see if the hearsay evidence was merely cumulative—i.e. "substantially the same evidence is in the record." *Brown*, 656 N.W.2d at 361 (citing *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986)); *see Elliott*, 806 N.W.2d at 669.

If the hearsay evidence is cumulative, we measure the trustworthiness of the underlying corroborative evidence as a basis for our determination of the trustworthiness of the related hearsay evidence. *Elliott*, 806 N.W.2d at 669. Based upon our trustworthiness determinations, we then decide whether the evidence affected the jury's ultimate determinations. *Id.*

We find Milligan's hearsay testimony regarding Pinegar's and McDonald's statements was cumulative to their testimony at trial.[2]

---

[2] Pinegar's testimony at trial included the same information as her statements to which Milligan testified. She testified in relevant part:

McGee asserts the facts in this case are similar to those in *State v. Horn*, in which our supreme court found that hearsay evidence, though cumulative, was not trustworthy. 282 N.W.2d 717, 725 (Iowa 1979). We find *Horn* to be distinguishable. In *Horn*, both the hearsay testimony and the corroborating testimony came from two men, one of whom was charged with the same murder as the defendant and the other of whom had pleaded guilty to that same murder. *Id.* at 724. Both had made deals with the county attorney in exchange for their testimony and were therefore incentivized to align their testimony. *Id.* at 725.

---

> Q: Have you ever been to the store with [McGee] and she's purchased pseudoephedrine and you've purchased pseudoephedrine?
> A: Yes.
> . . . .
> Q: [W]ould that have been at the same time of day? A: Yeah, on several occasions we both purchased at the same time.
> . . . .
> Q: [W]hat would you do with your pills then? A: I would leave them with her.
> . . . .
> Q: What were they for, the pills you were giving the defendant? A: Manufacturing methamphetamine.
> . . . .
> Q: After these occasions when you believed methamphetamine was being made, did you smoke it right away? A: [I]t takes a little while to dry, so as soon as it was ready.
>
> Milligan testified to three hearsay statements from McDonald: first, that she went to the store with McGee; second, that she purchased pseudoephedrine while at the store with McGee; and third, that she provided pseudoephedrine to McGee. The first two hearsay statements were corroborated by McDonald herself when she testified on cross examination:
>
> Q: [H]ave you been to the store in Ottumwa with the defendant?
> A: Yes.
> Q: Have you both purchased pseudoephedrine at the same time?
> A: I believe so.
>
> The third statement, while denied by McDonald at trial, is corroborated by an abundance of strong circumstantial evidence, including the NPLEx records and testimony by multiple witnesses—including Pinegar, whose testimony is credible—about the operation of the "smurfing" scheme by which the defendant was alleged to have obtained pseudoephedrine from multiple acquaintances.

In this case, the hearsay testimony came from an investigative officer, not a man in jail for the same crime as the defendant as in *Horn*. While Pinegar's corroborating testimony comes from a witness who was also charged with a related crime, she testified consistently with her interview statement. McDonald has not been charged in any relation to this case and testified on behalf of the defendant, so her corroborating testimony can be considered trustworthy. Unlike *Horn*, there is no evidence Pinegar and McDonald were incentivized to align their testimony to Milligan's or to each other's, especially since the two were called to the stand by adverse parties. No party contests the credibility of the corroborating circumstantial evidence of the NPLEx records.

McGee relies heavily on Pinegar's statement to Milligan during their interview: "I'll tell you whatever the fuck you want to know." McGee effectively used this statement in cross-examination of Pinegar, and the jury heard both the statement and Pinegar's explanation.

McGee also claims the hearsay was prejudicial notwithstanding its cumulative nature because "the only real purpose for admitting [it] is to bolster th[e] witness[es'] credibility." *Elliott*, 806 N.W.2d at 670. However, our case law is clear that prejudice will only be found under this standard in circumstances in which the credibility of the declarants—in this case, Pinegar and McDonald—is the lynchpin of the State's case. *See id.* at 672 ("[T]he outcome of the case depended entirely on the credibility of these witnesses[;] it is evident the sole purpose the State could have had for introducing [a witness's] hearsay testimony was to bolster the credibility of [the declarants], who all admitted they changed their stories."); *see also id.* at 671 (discussing the circumstances of *United States*

*v. Bercier*, 506 F.3d 625 (8th Cir. 2007), in which the case "turned on the credibility of the victim and the defendant" and "the hearsay testimony unfairly tipped the scales" of the credibility determination).

In this case, neither Pinegar's nor McDonald's testimony take on such a pivotal role. Pinegar's testimony was additional evidence of the mechanisms of the conspiracy, but it was not the only evidence or even the strongest evidence. McDonald testified on behalf of the defendant. Her testimony may have supported the defendant in presenting her defense, but nothing in her testimony was determinative of the outcome of the case. The hearsay testimony was not prejudicial based upon its effect on the declarants' credibility.

Milligan's hearsay testimony is, on the whole, cumulative and corroborated by trustworthy evidence elsewhere in the record. Therefore, McGee was not prejudiced by the district court's error in admitting the testimony, and she is not entitled to relief based upon that error.

B. Opinion Testimony

McGee's second assertion is that the trial court abused its discretion by impermissibly permitting Milligan to testify as to his opinion regarding the existence, operation, and members of the alleged conspiracy. The State argues this issue has not been preserved for our review. McGee argues the issue has been properly preserved, but she asserts in the alternative that her trial counsel's failure to preserve the issue would amount to ineffective assistance of counsel.

*1. Error Preservation.* McGee's objection to Milligan's opinion testimony was raised in a motion in limine, but it was not raised again at trial.

Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial. However, where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation, the decision on the motion has the effect of a ruling.

A ruling only granting or denying protection from prejudicial references to challenged evidence cannot preserve the inadmissibility issue for appellate review. However, if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial.

*State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006) (citations and internal quotation marks omitted).

The district court's decision on McGee's motion in limine stated:

The Court determines that Sergeant Milligan may testify based on his own first-hand knowledge, just as any other lay witness could so testify. The Court further determines that Sergeant Milligan may testify as to his knowledge, skill, experience, training, or education as a police officer who has conducted many drug conspiracy related investigations. *Assuming Sergeant Milligan[] testifies that he has extensive experience and education in conducting drug conspiracy investigations, he may testify as to expertise he has developed in this arena.* . . . Such testimony is likely to assist the jury as the trier of fact and is therefore admissible. The extent of his credentials and his credibility may be tested upon cross-examination. The weight of his testimony is for the trier of fact.

(Emphasis added.) The district court declared Milligan's testimony regarding his expert opinion on drug conspiracies admissible, and that declaration therefore has the force and effect of a ruling.[3] McGee's trial counsel therefore was not required to raise the objection again during the trial to preserve the issue for our

---

[3] The condition that Milligan first testify to his experience and education does not make the district court's ruling a mere denial of "protection from prejudicial references to challenged evidence." *Alberts*, 722 N.W.2d at 406. Our supreme court held in *Alberts*, "Even though the district court stated the evidence may become admissible . . . , this does not change the fact that the court's ruling was controlling so long as [the condition that would bar admissibility did not occur]." *Id.* at 407. We therefore disagree with the State that the district court's ruling on the motion in limine was "not conclusive."

review. Because we find the issue properly preserved, we review McGee's claim on its merits and need not reach the claim of ineffective assistance of counsel on this issue.

*2. Admissibility.* The trial court permitted Milligan to express his opinions on the existence, operation, and members of the alleged conspiracy even though those matters were issues to be decided by the jury.[4] *See* Iowa R. Evid. 5.704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). "[O]pinion testimony is not inadmissible because it embraces the ultimate issue in the case, but it must still be admissible under the other rules of evidence." *In re Det. of Palmer*, 691 N.W.2d 413, 419 (Iowa 2005).

The district court admitted the testimony based on Milligan's specialized knowledge as an officer who had investigated a large number of drug conspiracies similar to that alleged in McGee's case. Counsel did not challenge Milligan's specialized knowledge on this point. Rule 5.702 provides, "If . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." McGee now asserts Milligan's testimony was not helpful to the jury because it gave rise to a danger of conflating the term

---

[4] McGee also asserts that Milligan's testimony was contrary to her own assertion of innocence at trial, "necessarily include[d] the conclusion that she was not credible," and was therefore not admissible. McGee's cited authorities do not stand for the proposition that opinion testimony that runs contrary to a defendant's testimony is per se inadmissible. Milligan did not directly testify to McGee's credibility. It was within the province of the jury as the finder of fact to weigh the respective credibility of Milligan, McGee, and all the other witnesses and reach its own conclusions.

"conspiracy" as it was used in testimony and as it is defined in the law. She further claims the danger of the jury misunderstanding the import of the testimony outweighs any other probative value it may have had. *See Palmer*, 691 N.W.2d at 420; Iowa R. Evid. 5.403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .").

McGee relies heavily upon our supreme court's decision in *Palmer*, but *Palmer*'s statement of the applicable law does not support her position. The *Palmer* court favorably cites numerous authorities for the proposition that "when the popular meaning is roughly the same as the legal meaning, the opinion is not excludable merely because it contains legal terms." *Palmer*, 691 N.W.2d at 420 (citations and internal quotation marks omitted). The testimony is more likely to be admissible if the examiner "carefully explore[s] the bases for the opinion and by ph[r]asing his [or her] examination in factual terms." *Id.* (citations and internal quotation marks omitted).

We find Milligan's testimony regarding the nature of the alleged conspiracy in this case was carefully based on an exploration of factual background and specialized knowledge of a scheme that may not be within the common knowledge of the jury. In particular, the testimony described the modus operandi of individuals running a "smurfing" operation[5] and whether the characteristics of such an operation were present in this case. *See State v. Johnson*, 224 N.W.2d

---

[5] A smurfing operation is one in which a manufacturer of methamphetamine relies upon multiple buyers to purchase pseudoephedrine from various retail locations over a period of time. The buyers in turn provide the purchased pseudoephedrine to the manufacturer. This scheme creates a steady supply of pseudoephedrine without any one participant exceeding the legal purchase limits in the NPLEx records.

617, 622 (Iowa 1974) (finding a qualified expert with knowledge of the modus operandi of "tilltappers" possessed "a special knowledge of a subject which is not within the common experience of mankind generally").

We recognize the dictionary definition of conspiracy[6] and the legal definition[7] are not identical. However, as it pertains to a smurfing operation, they have roughly the same meaning so as to satisfy the requirement as stated in *Palmer*. Furthermore, the context of Milligan's testimony indicates his use of the word was based upon common parlance, and the jury would not have mistaken his testimony as a court-supported legal conclusion. Neither party argues the jury instructions on the legal definition of conspiracy were inadequate, and as the district court noted, the jury was tasked with weighing the value of Milligan's testimony when evaluating whether a conspiracy existed in the legal sense of the term.

Milligan's opinion testimony applying his knowledge and expertise of a typical smurfing operation to the facts of this case was admissible under our rules of evidence, and the district court did not abuse its discretion by admitting it.

### C. Ineffective Assistance—Quantity Evidence

McGee lastly claims her trial counsel was ineffective because he did not adequately respond to the State's failure to present evidence sufficient to calculate the quantity of methamphetamine allegedly produced.[8] Counsel's

---

[6] The Oxford American Dictionary defines "conspiracy" as "a secret plan by a group to something unlawful or harmful." Oxford American Dictionary (3d ed. 2010), *available at* http://www.oxforddictionaries.com/us/definition/american_english/conspiracy.

[7] *See* Iowa Code § 706.1.

[8] Iowa Code section 124.401(1)(b)(7) provides, "Violation of this subsection with respect to the following . . . substances . . . is a class 'B' felony: . . . More than five grams but not more than five kilograms of methamphetamine . . . ." It was therefore the State's burden

failure to recognize and respond to this evidentiary deficiency, she claims, constitutes ineffective assistance of counsel.

"We ordinarily preserve ineffective-assistance-of-counsel claims for postconviction relief proceedings." *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015). We may consider such a claim on direct appeal only if the record is sufficient to permit us to do so. *Id.*

In this case, McGee contends Milligan's testimony regarding methamphetamine yield was expert testimony admitted without the requisite foundation, was impermissible hearsay, and was factually inaccurate.[9]

First, we consider McGee's claim that her counsel failed to object to the foundation of Milligan's expert testimony regarding quantity. Contrary to her argument counsel did not object on this ground, counsel moved to prohibit this testimony in the motion in limine and did object to Milligan's lack of expertise regarding this "federal standard" of theoretical maximum yield during direct examination. The motion in limine based on lack of foundation and expertise and the objection based on the same grounds were overruled. Counsel effectively challenged Milligan's erroneous testimony, and his cross-examination clearly demonstrated Milligan's lack of foundation for the "standard." McGee's

---

to prove that more than five grams of methamphetamine were manufactured during the course of the conspiracy.

[9] Milligan testified the Iowa Division of Criminal Investigation maintains 92% yield is the average yield for methamphetamine production—i.e. an average methamphetamine cook will produce 92 grams per 100 grams of pseudoephedrine. Both parties agree this statement was false. Milligan also admitted in his testimony, "I am not a chemist." He explicitly stated he was not the right person to answer technical questions about methamphetamine yields. The State failed to present any other evidence demonstrating the amount of methamphetamine allegedly manufactured in the course of the alleged conspiracy.

ineffective-assistance-of-counsel claim based on failure to object to lack of foundation and expertise is belied by the record and is denied.

However, McGee also challenges the efficacy of counsel's representation in several other respects. First, she notes counsel failed to object to Milligan's testimony regarding the standard applied to quantity calculations as hearsay.[10] We agree; the record does not reflect any such objection was made. Second, she notes counsel failed to call an expert to rebut Milligan's testimony and "show both that the theoretical yield was wrong and that the ultimate amount of methamphetamine could not be determined." Indeed, the record reflects no such evidence was presented. Third, McGee notes counsel failed to move for a directed verdict on the matter of quantity of methamphetamine allegedly manufactured, which is indisputably an element of the crime charged. *See* Iowa Code §§ 124.401(1)(b)(7), .401(1)(c)(6). The record confirms no such motion was made.

However, there is insufficient evidence in the record for us to reach a conclusion as to whether any of these failures amounted to ineffective assistance of counsel. There is no evidence of counsel's intentions, additional knowledge, or decision-making rationale pertaining to any of these alleged deficiencies. We therefore preserve this portion of McGee's claim of ineffective assistance for postconviction-relief proceedings during which a record may be developed that includes additional necessary evidence.

---

[10] Regarding his knowledge of theoretical, average, and maximum yields, Milligan testified, "I'm not a chemist. I don't manufacture methamphetamine. I get my information from the Division of Criminal Investigation and the experts, and that's what they say." Therefore, McGee argues, all of Milligan's testimony on this topic was hearsay.

**IV. Conclusion**

As to Milligan's hearsay testimony, the district court erred in admitting the evidence. However, McGee suffered no prejudice from that error, and she is not entitled to relief. As to Milligan's opinion testimony regarding the existence, operation, and members of the conspiracy, the issue was preserved for our review. However, on a review of the record, we find the district court's exercise of its discretion in admitting the evidence was proper. We affirm the district court on both evidentiary issues. As to McGee's ineffective-assistance-of-counsel claim, we find the claim to be meritless as it pertains to counsel's duty to object to the foundation for Milligan's quantity testimony. In all other respects, we find the record insufficient to resolve the issue of ineffective assistance, and we therefore preserve her claim for future postconviction-relief proceedings.

**AFFIRMED.**