# IN THE COURT OF APPEALS OF IOWA

No. 18-0574
Filed April 17, 2019

**CRAIG NABER,**
        Plaintiff-Appellee,

**vs.**

**JERALD "JERRY" NABER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Buchanan County, Joel Dalrymple,

Judge.


        Jerald Naber appeals the district court's denial of his motion for new trial in

this negligence action.  Craig Naber cross-appeals, seeking interest on the jury

award to begin on the date of the negligent conduct.  **AFFIRMED ON APPEAL;**

**AFFIRMED AS MODIFIED ON CROSS-APPEAL.**


        David L. Riley of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

        Bradley M. Arnold of Kolb Clare & Arnold, P.C., Buffalo Grove, Illinois, for

appellee.


        Considered by Vogel, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Jerald (Jerry) Naber appeals the district court's denial of his motion for new trial following a jury verdict finding him negligent for destruction of a tractor and attachment owned by his brother, Craig Naber.  On appeal, Jerry seeks a new trial on the basis of (1) testimonial references to an insurance company, (2) the court's classification of certain witnesses as experts, (3) witness testimony regarding the reasonableness of Jerry's conduct, (4) the court's refusal to permit certain testimony, and (5) the theories of negligence presented to the jury.  Craig cross-appeals, arguing interest in the judgment should accrue from the date of loss rather than the date the action commenced.

## I.  Background Facts and Proceedings

The events giving rise to this cause of action occurred on October 19, 2015.  The weather that day was dry and windy; there was both a burn ban and red-flag warning[1] in effect.  Jerry and Craig both work as farmers.  Craig rents farmland from his mother, and Jerry sometimes stores grain in a grain bin on the land Craig

---

[1] A red-flag warning is:

> A term used by fire-weather forecasters to call attention to limited weather conditions of particular importance that may result in extreme burning conditions.  It is issued when it is an on-going event or the fire-weather forecaster has a high degree of confidence that Red Flag criteria will occur within 24 hours of issuance.  Red Flag criteria occurs whenever a geographical area has been in a dry spell for a week or two, or for a shorter period, if before spring green-up or after fall color, and the National Fire Danger Rating System (NFDRS) is high to extreme and the following forecast weather parameters are forecasted to be met:
> 1) a sustained wind average 15 mph or greater
> 2) relative humidity less than or equal to 25 percent, and
> 3) a temperature of greater than 75 degrees F.

*Red Flag Warning*, National Oceanic and Atmospheric Administration's National Weather Service, https://w1.weather.gov/glossary/index.php?word=red+flag+warning (last visited Apr. 2, 2019).

rents. Both men tended to their respective farming duties on October 19. Craig and his farmhand, Leslie Stacy, performed maintenance on a combine. As they worked, Jerry arrived to clean out and use the grain bin. Earlier, Craig combined some of his corn crop immediately adjacent to the bin so Jerry could access it. Jerry's son arrived to help him. As the two worked, Jerry's pickup truck was parked over the dry combined corn stalks, which stood roughly one-and-a-half feet tall. The corn stalks ignited, starting a field fire, and Jerry quickly alerted Craig and Stacy to the fire while his son called 911.

Craig used a tractor and chisel-plow attachment to create a dirt berm along the fire to prevent it from spreading. During this process, the fire reached the tractor multiple times. At one point, Craig noticed his front, right tire was on fire. Around this time, he saw someone, who he believed to be a firefighter, nearby and requested assistance. The individual did not try to put out the fire and instead drove away. Eventually, the field fire was extinguished, but Craig's tractor was destroyed and his chisel plow attachment was damaged.

In November 2016, Craig brought this negligence action against Jerry. Following a three-day trial in January 2018, a jury found Jerry negligent and awarded Craig $198,100 in damages. Jerry moved for a new trial, which the district court denied. Craig petitioned for costs associated with the proceedings and moved to amend the judgment to accrue interest from the date of the fire rather than the date the action commenced. The district court ordered the judgment to include costs but denied the motion to amend the judgment. Jerry appeals and Craig cross-appeals. Additional facts will be set forth below as are relevant to the issues raised on appeal.

## II.     Standards of Review

Our standard of review when reviewing a denial of a "motion for new trial depends on the grounds raised in the motion." *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 445 (Iowa 2016) (quoting *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006)).  Because evidentiary rulings are reviewed for an abuse of discretion, we review Jerry's claims the district court's admission of certain evidence warrants a new trial for an abuse of discretion.  *See Mohammed v. Otoadese*, 738 N.W.2d 628, 631 (Iowa 2007) (noting evidentiary rulings are reviewed for an abuse of discretion); *Clinton Physical Therapy Servs., P.C.*, 714 N.W.2d at 609 ("If the motion for a new trial was based on a discretionary ground, we review it for an abuse of discretion." (internal quotation marks and citation omitted)).  "A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable." *In re Trust No. T–1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013).  The "grounds for a ruling are unreasonable or untenable when they are based on an erroneous application of the law." *Id.*  A new trial is not warranted "unless a different result would have been probable in the absence of misconduct." *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011).

We review alleged errors in jury instructions for legal error.  *See Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 891 (Iowa 2015).  An error in jury instructions does not require reversal unless it resulted in prejudice.  *See id.* at 892.  Prejudice occurs when the jury is misled or if the instructions materially misstate the law.  *See id.*

The award and calculation of prejudgment interest is reviewed for errors at law. *See Gosch v. Juelfs*, 701 N.W.2d 90, 91 (Iowa 2005). When substantial evidence "support[s] the trial court's decision, we are bound by its fact-finding," but "[w]e are not bound . . . by the trial court's application of legal principles." *Id.* We strictly construe "Iowa statutes providing for recovery of costs." *Hughes v. Burlington N. R.R. Co.*, 545 N.W.2d 318, 321 (Iowa 1996).

### III.    Analysis

#### A.    Insurance References

In his first claim of error, Jerry argues references made to insurance throughout the proceedings necessitate a new trial. The district court sustained Jerry's motion in limine prohibiting references to liability insurance stating, "The parties should be precluded from making any reference or discussions in the presence of the jury of any sort relevant to insurance coverage." Additionally, Iowa Rule of Evidence 5.411 prohibits "[e]vidence that a person was or was not insured against liability . . . to prove whether the person acted negligently or otherwise wrongfully." Evidence of insurance coverage is prohibited because: (1) "the evidence is ordinarily irrelevant to any issue in the case," (2) "it tends to influence jurors to bring in a verdict against a defendant on insufficient evidence," and (3) "it causes jurors to bring in a larger verdict than they would if they believed the defendant would be required to pay it." *Laguna v. Prouty*, 300 N.W.2d 98, 101 (Iowa 1981).

Craig's counsel purportedly inquired into the jury's experience with insurance claims during voir dire. Because the parties elected to not have jury selection reported, we have no record of the claimed improper questions. Further,

there is no record of timely objections by Jerry.[2]  Consequently, error was not preserved on any claimed violation during voir dire.  *See In re F.W.S.*, 689 N.W.2d 134, 135 (Iowa 2005) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon.  The court may not speculate as to what took place or predicate error on such speculation."); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (requiring an issue be "both raised and decided by the district court before we will decide them on appeal").[3]

Subsequent references to insurance relate to comments made by an expert witness, Steven Hamers.  When describing who seeks out his services as an expert witness, Hamers noted he is sometimes retained by insurance carriers.  He then identified materials he reviewed during his trial preparation that discussed ways to avoid field fires as produced by Grinnell Mutual Insurance.  Hamers explained Grinnell Mutual insures farm equipment and insures many farmers in Iowa.  On cross-examination, defense counsel inquired if Hamers considered the information from Grinnell Mutual to come from an authoritative source but did not reference Grinnell Mutual by name.  Hamers confirmed counsel intended to reference the Grinnell Mutual material by referring to it by name.[4]  Although

---

[2] There is no indication Jerry sought to create a record under Iowa Rule of Appellate Procedure 6.806.

[3] Assuming Craig's counsel made such inquiries and Jerry preserved error by objecting, the inquiries do not warrant a new trial because they did not serve as evidence for the jury's consideration.  *See Salami v. Von Maur*, No. 14-1603, 2016 WL 530253, at *4–5 (Iowa Ct. App. Feb. 10, 2016) (concluding references to insurance during voir dire did not violate rule 5.411 because voir dire is not evidence for the jury's consideration).

[4] The following exchange occurred between counsel and Hamers:
> Q: Exhibit 11 is something from a website?  A: That was Grinnell Mutual, an Iowa insurance carrier.
> Q: And the question is, is Exhibit 11 something from a website. That's the question.  A: Yes, from Grinnell Mutual's website.

Grinnell Mutual served as Jerry's insurance provider, no one at trial indicated Grinnell Mutual insured Jerry or indicated Jerry carried liability insurance generally. Simply put, no evidence regarding liability insurance was ever introduced or alluded to during trial. Neither rule 5.411 nor the ruling on the motion in limine were violated. The district court did not err in denying the motion for new trial based on references made to insurance during trial.

B.     Qualification of Witnesses as Experts

Next, Jerry claims the court erred in allowing two farmhands to testify as experts. Farmhands Rex Yearous and Leslie Stacy testified to standard farming practices used to avoid field fires and the dangers of driving a pickup truck into a dry field. Iowa Rule of Evidence 5.702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the [jury] to understand the evidence or to determine a fact in issue." Iowa courts "have been committed to a liberal view on the admissibility of expert testimony." *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). However, the proponent of the testimony must demonstrate (1) "the testimony 'will assist the trier of fact' in understanding 'the evidence or to determine a fact in issue'" and (2) "the witness is qualified to testify 'as an expert by knowledge, skill, experience, training, or education.'" *See id.* at 685–86.

Jerry contends Yearous and Stacy were not qualified to testify as experts, citing their lack of education or specialized training. Yearous has roughly twenty-five years of farming experience. He received on-the-job training and has read various publications to help educate himself on farm-safety issues. Stacy began

operating farm equipment at the age of ten through his mid-twenties. He then worked as a firefighter in various capacities for roughly three and a half years. Stacy, forty-five at the time of trial, now works for Craig on the farm. Because both men have extensive farming experience, their lack of formal education or formal training regarding standard farming practices is of no consequence. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 535 (Iowa 1999) ("[N]o particular education is required; experience is sufficient to qualify a witness as an expert."). "Moreover, an expert does not need to be a specialist in the area of the testimony as long as the testimony is within the general area of expertise of the witness." *Ranes*, 778 N.W.2d at 687. Given our liberal view on the admissibility of expert testimony, we conclude Yearous and Stacy qualified as experts and the district court did not abuse its discretion in denying the motion for new trial on this ground. *See id.* at 685.[5]

### C. Substance of Expert Testimony

In addition to challenging Yearous and Stacy's qualification as experts, Jerry also challenges the admissibility of their testimony and Hamers's testimony regarding whether each believed Jerry's conduct of driving a pickup truck in the field was reasonable or reasonably safe. He argues such testimony impermissibly commented on the legal standard at issue. *See Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 601 (Iowa 2017) ("[E]xpert testimony as to a legal

---

[5] To the extent Jerry argues the district court abused its discretion in failing to exercise discretion when determining whether Stacy qualified as an expert by stating "ultimately it's up for the jury to determine whether he's an expert or not under Iowa law," the issue is not preserved for appellate review. Jerry never made this argument to the district court during trial and did not raise the claim in his motion for new trial. *See Meier*, 641 N.W.2d at 537 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

conclusion is inadmissible in an ordinary negligence case."); *In re Palmer*, 691 N.W.2d 413, 419 (Iowa 2005) ("A witness cannot opine on a legal conclusion or whether the facts of the case meet a given legal standard."), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016); *Grismore v. Consol. Prods. Co.*, 5 N.W.2d 646, 663 (Iowa 1942) ("When a standard, or a measure, or a capacity has been fixed by law, no witness whether expert or non-expert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct, in question, measures up to that standard. On that question the court must instruct the jury as to the law, and the jury must draw its own conclusion from the evidence."). However, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Iowa R. Evid. 5.704.

Here Craig was required to prove Jerry's negligence caused the damage to his property. Specifically, to find Jerry liable, the jury was required to find the following elements satisfied:

> (1) [Jerry] was negligent in one or more of the following ways:
>    (a) He parked his truck such that it was in direct contact or very close to dry vegetation that could catch fire,
>    (b) He failed to keep his truck away from dry vegetation, or
>    (c) He failed to make sure that the area where he drove and parked his truck was safe for that activity.
> (2) The negligence was the cause of the damage to [Craig].
> (3) The amount of damage.

The jury instructions defined negligence as follows:

> "Negligence" means failure to use ordinary care. Ordinary care is the care which a reasonably careful person would use under similar circumstances. "Negligence" is doing something a reasonably careful person would not do under similar circumstances, or failing to do something a reasonably careful person would do under similar circumstances.

Jerry cites the following dialogue between Craig's counsel and Yearous, Stacy, and Hamers, respectively, as objectionable:

> Q: Under the circumstances existing in that area at the time of this fire, did you think it was reasonable for Jerry Naber to be driving a gas pickup truck directly into a combined field? . . . . A: No.
>  . . . .
> Q: Given the conditions that were existing at the time that Jerry pulled his pickup truck into the combined field, did you think it was reasonably safe for him to do that? A: No.
>  . . . .
> Q: Under the conditions then and there existing at the time of the fire, or just before the fire, I should say, in your expert opinion to a reasonable degree of certainty was it reasonably safe for Jerry to drive his gas pickup into that combined field? . . . . A: No, I believe it was unsafe at that time. The ground conditions and the ground cover conditions were such that it was very easy to ignite the crop debris using a—the temperature of the heat from an exhaust system under a pickup.

While the complained of expert testimony may have embraced the ultimate issue, none of the testimony reached a legal conclusion regarding whether Jerry was negligent. *See id.*; *Haskenhoff*, 897 N.W.2d at 600 (noting "questions such as whether a defendant was *negligent* or *not negligent* are improper because '[e]xperts are not to state opinions as to legal standards'" (alteration in original) (emphasis added) (quoting Iowa R. Evid. 5.704 committee cmt. (1983))). Furthermore, expert testimony establishing a standard of care is "generally permitted in negligence actions." *See Haskenhoff*, 897 N.W.2d at 600. We find the complained-of testimony served as a means to establish the standard of care rather than opine as to a legal conclusion.

D.     Exclusion of Testimony

Next, Jerry claims the district court erred in excluding testimony that a firefighter did not assist Craig after he requested help extinguishing his front tire.

Jerry sought to introduce the testimony regarding the firefighter's failure to act as evidence of a superseding cause between his conduct, which started the fire, and the destruction of the entire tractor and damage to the attachment. *See Hayward v. P.D.A., Inc.*, 573 N.W.2d 29, 32 (Iowa 1997) ("[A] defendant's conduct is not a proximate cause of a plaintiff's harm if it is superseded by later-occurring independent forces or conduct."). "To conclude that an event or conduct constitutes a superseding cause, the court must find that 'the later-occurring event is such as to break the chain of causal events between the actor's [conduct] and the plaintiff's injury.'" *Id.* (quoting *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991)). "In order for an intervening act or force to relieve an individual from liability, [the harm] must not have been a normal consequence of his [or her] acts or have been reasonably foreseeable." *Id.* (first alteration in original) (quoting *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 15 (Iowa 1977)).

We first note the firefighter's failure to act could not relieve Jerry from liability because damage to nearby farming equipment, the tractor and attachment, was a normal consequence of the field fire and was reasonably foreseeable. *See id.* Consequently, we agree with the district court's determination that the testimony should have been excluded because it was not relevant. *See Spahr v. Kriegel*, 617 N.W.2d 914, 917 (Iowa 2000) ("Evidence is relevant if it renders the existence of a fact more probable or less probable as a result of that evidence."). The purported failure of the firefighter to act could not serve as a superseding cause to relieve Jerry of any liability, and, furthermore, Jerry provided no offer of proof regarding whether the person was actually a firefighter, heard Craig's request, or

had the ability to extinguish the fire. We find the court did not abuse its discretion in excluding the testimony or in denying the motion for new trial on this basis.

E.    Jury Instructions

Jerry contends the court erred in submitting three possible forms of negligent conduct to the jury in the marshalling instruction and argues the error necessitates a new trial. Craig responds that this issue is not preserved for review because Jerry did not raise the issue in his motion for new trial. However, Jerry objected to the marshalling instruction during trial, and the court considered and ruled upon the issue preserving it for appellate review. *See Schmitt v. Koehring Cranes, Inc.*, 798 N.W.2d 491, 496 (Iowa Ct. App. 2011) (finding jury-instruction issue preserved when a party requested an instruction that was denied and the party objected to its exclusion but failed to raise the issue in its motion for new trial). As a result, we reach the merits of Jerry's claim.

When submitting a negligence claim, "a plaintiff must identify the specific acts or omissions relied on to generate a jury issue." *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000). "Jury instructions should be formulated so as to require the jury to focus on each specification of negligence that finds support in the evidence." *Id.* (quoting *Bigalk v. Bigalk*, 540 N.W.2d 247, 249 (Iowa 1995)). The marshalling instruction submitted to the jury specified three possible forms of conduct the jury could rely upon to conclude Jerry acted negligently. Those are:

> (a) He parked his truck such that it was in direct contact or very close to dry vegetation that could catch fire,
> (b) He failed to keep his truck away from dry vegetation, or
> (c) He failed to make sure that the area where he drove and parked his truck was safe for that activity.

Jerry asserts the marshalling instruction presented erroneous potential instances of negligence because "[t]here is no authority, by statute or common law that says a farmer cannot drive his pickup truck into a field at harvest time."[6] However, a negligence case does not require violation of a specific law, rather it requires a party to violate a duty to comply with a standard of care and depends on the facts of each individual case. *See, e.g.*, *id.* at 586 (identifying an approved jury instruction in a negligence case that alleged a party was negligent for "blocking an aisle by placement of [an] ashtray"). A negligence specification should be submitted to the jury so long as there is sufficient evidence supporting the claim. *See id.* at 585. Here, there was sufficient evidence presented supporting all three negligence specifications. There was evidence presented indicating Jerry parked his truck in a dry combined field and the truck's exhaust system was roughly the same height as the dry corn stalks so that they could come in contact and ignite. There was evidence presented that Jerry did not keep the truck away from the corn stalks and he did not consider the condition of the area where he parked or whether parking the truck over dry corn stalks would increase the risk of fire. Craig provided sufficient evidence through testimony of several witnesses from which the jury could find that all three forms of conduct violated the standard of care followed by those in the farming industry. As a result, the court did not err in submitting the marshalling instruction, and a new trial is not required.

---

[6] Jerry also briefly argues the third possible form of negligent conduct, for his failure to ensure "he drove and parked his truck in an area safe for that activity," amounts to a premises-liability claim. This is not a premises-liability claim, rather it is a claim that Jerry did not reasonably conform his conduct to the conditions he found himself in. *See Ries v. Steffensmeier*, 570 N.W.2d 111, 113 (Iowa 1997) ("[P]remises liability stems from physical harm to the plaintiff caused by a condition on the possessor's *land*.").

F.    Craig's Cross-Appeal

On cross-appeal, Craig claims the district court erred in ordering interest to begin accruing from the date the action commenced rather than the date of the fire.  Iowa Code section 668.13(1) (2016) provides: "Interest . . . shall accrue from the date of the commencement of the action."  Our supreme court has "recognized, however, that this statute does not govern in those situations in which our case law has provided that interest may be allowed from a date prior to the filing of a petition."  *Gosch*, 701 N.W.2d at 92.  "One such exception has been stated to be that . . . [i]nterest is allowable on unliquidated claims wherever it appears that the damage was complete at a particular time . . . ."  *See id.* (internal quotation marks omitted) (quoting *Bridenstine v. Iowa City Elec. Ry.*, 165 N.W. 435, 439 (Iowa 1917)).  Here, the damage to the tractor and attachment was complete on the date of the fire, October 19, 2015, and Craig is entitled to interest accruing from that date.

IV.    **Conclusion**

On Jerry's appeal, we find no error necessitating a new trial and affirm the district court.  On Craig's cross-appeal, we conclude interest on the judgment award of $198,100 should accrue from October 19, 2015, at the statutory legal interest rate, and we modify the judgment to reflect the same.  *See id.* at 93.

**AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**