**IN THE COURT OF APPEALS OF IOWA**

No. 23-0347
Filed July 3, 2024

**IN RE DETENTION OF MAX EVAN MEHARRY STONE,**

**MAX EVAN MEHARRY STONE,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Fayette County, Richard D. Stochl,

Judge.

Max Evan Meharry Stone appeals from the trial court's finding that he is a

sexually violent predator. **AFFIRMED.**

Wendy S. Samuelson, Assistant State Public Defender, Special Defense

Unit, Des Moines, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee.

Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Max Evan Meharry Stone appeals from the trial court's finding that he is a sexually violent predator (SVP) and therefore should be civilly committed pursuant to Iowa Code chapter 229A (2019).  He contends that his constitutional rights were violated, and he challenges the court's evidentiary ruling and sufficiency of the evidence.  Upon our review, we affirm.

### I.      Background Facts and Proceedings.

Though Stone's present case stems from more recent events, his story begins in 1993, when he was convicted of two counts of lascivious acts with a child.  Stone pled guilty and confessed "that he had disrobed and attempted to have sexual intercourse" with two thirteen-year-old girls.  He later explained that he tried to rape one of the girls because she "was drunk on pills and weak" and threatened to "kill her if she 'did not shut the fuck up.'"  Stone later testified that these incidents involved cocaine usage.

While he was originally sentenced to probation on these early matters, Stone struggled.  Finding he committed probation violations, the court took him off of street probation for a period of time and placed him into a residential treatment facility.  After completing his time there, Stone went back to street probation.  He was also ordered to complete a sex offender treatment program (SOTP).  While Stone testified that he participated in that program and even received a certificate, records indicate he "did not complete it due largely to his non-compliance."  When the State's expert asked him if he would complete SOTP if ordered, Stone stated, "I won't do it . . . no way in hell!"

Experts testified both for Stone and for the State in Stone's 229A committal trial. Both expert witnesses, in their testimonies and reports, acknowledged that Stone struggled while on probation for the 1993 offense. "Probation records indicated that he continued to interact with young girls, including being 'involved in a relationship with a 13 yr old female'" and having a sexual relationship with a young girl who was living with him. He further "admitted to fondling a minor female" and "admitted to having sexual intercourse with a [thirteen-year-old girl] about 3-4 times in September and October of 1993." On his second attempt at street probation, Stone "admitted to sexual contact with another minor including mutual masturbation" and sexual contact with his wife's seventeen-year-old sister. Stone's probation was revoked as a result, and he finished his sentence in prison.

While in prison, Stone continued to struggle. He was "written up for possession of hand-drawn pornography," much of which depicted "naked people" and "large-breasted women." The State later introduced the drawings at trial.

In 2003, after he was released from prison, Stone was in a motorcycle accident which left him with a severe traumatic brain injury. Stone testified that as a result of the injury, he was unable to effectively communicate and maintain an erection.

In 2018, more allegations against Stone surfaced after his younger daughter disclosed to her high school teacher that Stone was abusing her. After an investigation, the State charged him in two separate felony cases. In one, the State charged him with second-degree sexual abuse, two counts of third-degree sexual abuse, and incest of his younger daughter; in the other, the State charged him with drug distribution to a minor and assault with intent to commit sexual abuse

against his older daughter who had also come forward with allegations against him. Stone moved for a competency evaluation and was ultimately found not competent to stand trial and "could likely never be restored to competency." As a result of the evaluation, proceedings for both cases were stayed.

The State petitioned for civil commitment under Iowa Code chapter 229A. The purpose of these proceedings is to provide "long-term care and treatment" to those "unamenable to existing mental illness treatment modalities and that render them likely to engage in sexually violent behavior." Iowa Code § 229A.1. There is a two-part commitment process when the respondent cannot be criminally tried because they are found not competent to stand trial, as is the case with Stone. The court first determines whether the respondent committed a sexually violent offense. *Id.* § 229A.7(1). It then determines whether the respondent fits the criteria as an SVP and should be committed under the statute. *Id.* § 229A.7(1). An SVP is someone "charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." *Id.* § 229A.2(12). A respondent found to be an SVP is then committed to such a "secure facility" for "control, care, and treatment." *Id.* § 229A.7(7). Throughout the first phase of these proceedings, the respondent is afforded the same rules of evidence and constitutional protections as those in the criminal system, apart from the right to be tried while incompetent. *Id.* § 229A.7(1).

Because Stone could not be tried criminally, the court bifurcated his proceedings into two trials as the statute affords: the first to determine whether he committed sexually violent offenses and the second to determine whether

commitment was appropriate under chapter 229A. Before the first trial, Stone moved for another competency evaluation, arguing that Iowa Code section 229A.7 is unconstitutional. The trial court denied the motion, finding (1) this was a civil process that did not require a right to be competent and (2) that the governmental interest in protecting the public and the procedural safeguards in place to protect respondents are adequate to justify any deprivation of Stone's liberty.

Due to the COVID-19 pandemic, trial was delayed until July 8, 2021. At the first trial, the sole issue to be determined was whether Stone committed a "sexually violent offense." *See id.* § 229A.2(12). The State introduced testimony from both of Stone's daughters, where the two women detailed the years of sexual abuse they endured at his hands.

His younger daughter, C.S., testified that her abuse occurred while her mother worked long hours and her brother was in his bedroom. She recounted how the abuse started, with Stone "calling [her] names," referring to her "boobs or butt," and telling her "to give him a blow job or hand job." When she did not comply with his directions, Stone "would get mad," use racial slurs against her, and accuse her of lying to him and not fulfilling something she promised. Things escalated when on a near-daily basis, he pinned her down and removed her clothing. On other occasions, he would tell her to remove her own clothing once she returned home from school. Stone would then touch her inner thigh and on one occasion touched her vagina. That time, C.S. testified that Stone held her hands above her head, removed her pants, and "touched down there with the tip [of his penis]" but stopped when he heard footsteps upstairs. When C.S. reported the abuse to her mother, her mother's response was to tell her "to avoid him and not to wear the

clothes I wear." She did not disclose the abuse again until the report to her teacher which sparked the initial investigation and charges.

Stone's older daughter, S.K., testified that Stone "drank a lot, was into drugs," and was physically abusive. But the sexual abuse began when she was ten years old, starting with him forcing her to strip for him "several times a week." Because of his accident, she said he would communicate with gestures and demand, "I want everything off." At first, Stone would have her sit on the couch naked, but later, he would tell her, "I want you to take your clothes off when you get home from school and I want you in my room in my bed." S.K. testified that she would obey or "get hit" and that Stone had hit her before when she refused. Other times, Stone would threaten to kill her. After S.K. would undress and lay in the bed as directed, S.K. testified that Stone "would start caressing my breasts," remove clothing, "and he would start touching me." At twelve years old was the "first time he physically touched [her] with his penis." When S.K. reported the abuse to her mother, the mother yelled at Stone but did nothing to stop him. S.K. later disclosed to law enforcement after they contacted her about C.S.'s report.

The trial court found beyond a reasonable doubt that Stone committed sexually violent offenses against his daughters. In its ruling, the court held that:

> [The victims] were both compelling and composed witnesses. They presented with no motive to fabricate their claims and were mostly consistent in their memory of the events. Any inconsistencies were not surprising considering the amount of time that has passed. Further, their accounts of how Stone groomed them and the similarity of their experiences lends credibility to their accounts. The court finds both young women credible and that they were sexually abused by their father.

On December 9, 2022, the second part of trial was held to determine whether Stone was an SVP such that committal under chapter 229A was appropriate. Stone testified on his own behalf, claiming that he was incapable of harming his daughters because of the physical limitations following his accident. He also provided explanations for some of his prior disciplinary history and reported that he completed SOTP. He then described his plans to live with his father and maintain sobriety after his release.

Both Stone and the State called expert witnesses and offered accompanying reports. The State's expert, Dr. Tracy Thomas, is a board-certified forensic psychologist. After her interview and review of his records, she diagnosed Stone with "Other Specified Paraphilic Disorder," which she opined "leads him to want to engage in the sexual behavior with young adolescents." She also noted Stone's traumatic brain injury and his history of substance use disorder "exacerbates his risk for reoffending." Dr. Thomas further opined that Stone's diagnoses fit the definition of "mental abnormality" and "that he is more likely than not to reoffend."

The defense expert, Dr. Christopher Fisher, is a clinical forensic psychologist. After his evaluation, which was conducted in a similar manner to Dr. Thomas's, Dr. Fisher disagreed with her findings. Instead, Dr. Fisher diagnosed Stone "with a neurocognitive disorder related to traumatic brain injury" and substance use disorder, which he opined do not qualify under the "mental abnormality" definition. He further found that Stone was not more likely than not to reoffend and did not meet the criteria of an SVP.

After reviewing the evidence, the court found the State's expert more credible and committed Stone "to the custody of the director of the department of human services for control, care, and treatment." *See id.* § 229A.7. Stone appeals, arguing that the statute is unconstitutional, that the court abused its discretion in its evidentiary ruling, and that insufficient evidence supports the court's finding.

## II. Constitutionality of Iowa Code Section 229A.7.

Stone first contends that the SVP statute is unconstitutional because it violates his right to be competent to stand trial. *See id.* § 229A.7 (committing those found to be a "sexually violent predator" "to the custody of the director of the department of human services for control, care, and treatment" until the respondent is considered "safe"). The Iowa Supreme Court has already determined these proceedings do not offend substantive due process rights. *See In re Det. of Cubbage*, 671 N.W.2d 442, 448 (Iowa 2003) (finding "no deprivation of any constitutional due process rights related to competency" in the context of SVP proceedings); *In re Det. of Garren*, 620 N.W.2d 275, 285 (Iowa 2000) ("We think there is a reasonable fit here between the State's purpose of protecting society from persons who have been determined to be likely to reoffend if not placed in a secure facility and their placement in such a facility."). To the extent that Stone argues we should overturn such precedent, "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). Stone also raises a procedural due process challenge but fails to identify any procedures he was not afforded. We therefore find his argument without merit.

### III. Reliance on Expert Witness Report and Testimony.

*A. Admission of Expert Report and Testimony.*

Stone next contends that the trial court abused its discretion by admitting expert reports and testimony containing hearsay statements. "Although we generally review the district court's admission of hearsay evidence for errors at law, 'when the basis for admission of hearsay evidence is the expert opinion rule, which provides no hard and fast rule regarding admissibility, we will employ an abuse of discretion standard.'" *In re Det. of Stenzel*, 827 N.W.2d 690, 697 (Iowa 2013) (citation omitted). We reverse only if the court exercised such discretion "on clearly untenable or unreasonable grounds." *Id.*

*1. Error Preservation.*

The State contests error preservation on this issue, arguing the court did not rule on Stone's objection to the admission of the reports and that Stone failed to object to the expert's testimony at trial. We consider each argument in turn.

At trial, Stone's counsel objected "with regard to the exhibits that are reports from Dr. Thomas . . . we would only object to those insofar as they contain hearsay." Counsel made "no objection to the other exhibits." In response, the court admitted all the exhibits. The State argues that this exchange is insufficient to preserve error because "the court admitted the document without addressing the objection or ruling on it." Without deciding whether this sequence of events preserved error on Stone's hearsay objection to the expert witness report, we will assume for purposes of discussion that it did.

But we note that error was not preserved on either the testimonies or the other exhibits because Stone failed to raise the issues below. *See Meier v.*

*Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). While Stone objected to Dr. Thomas's expert report, other exhibits, such as Dr. Fisher's report, were admitted without objection. In particular, Dr. Fisher's report contains many of the same hearsay statements as Dr. Thomas's report. Similarly, while Dr. Thomas and Dr. Fisher both testified to hearsay statements provided in their reports, Stone failed to object. *See State v. Pitsenbarger*, No. 14-0060, 2015 WL 1815989, at *4 (Iowa Ct. App. Apr. 22, 2015) (noting that "trial counsel did not preserve error" when he failed to object to expert testimony). We therefore find that error was not preserved as to either expert's testimonies or the other exhibits.

   2.   *Reliance on the Expert Witness Report in Ruling.*

Stone's specific complaint with Dr. Thomas's report is that it references his alleged probation violations and failure to complete SOTP. Even if the statements are hearsay, the evidence can be used by an expert when forming their opinion. *In re Det. of Tripp*, 915 N.W.2d 867, 874 (Iowa 2018). But this is a separate determination than whether the evidence is admissible as substantive evidence. *Id.*

"[E]vidence of past sexual offenses are relevant and admissible" to establish Stone's likelihood of reoffending. *In re Det. of Triplett*, No. 05-2147, 2007 WL 3376891, at *2 (Iowa Ct. App. Nov. 15, 2007); *In re Det. of Williams*, 628 N.W.2d 447, 456 (Iowa 2001) (finding that "prior sexually violent behavior is a relevant predictor of future dangerousness," which is an essential element of the

committal process). Similarly, whether Stone completed SOTP is also relevant and admissible for the same purpose. *Triplett*, 2007 WL 3376891, at *2.

Stone contends "[t]here is no admissible evidence in the record to prove these facts." But this is incorrect. Dr. Thomas testified to the allegations without objection. Even Stone's own expert, Dr. Fisher, included exactly the same evidence in his own expert report and similarly testified to the allegations. Stone himself even corroborated the experts, testifying to his probation being revoked and his disciplinary history while in prison. The State also offered several exhibits, including proof of Stone's prior convictions and evidence from his 2018 criminal proceedings. This evidence speaks to the same premise: Stone's probation violations, including misconduct with young girls and failure to complete SOTP. *See State v. Newell*, 710 N.W.2d 6, 27 (Iowa 2006) (finding hearsay statements admissible when the information was "merely cumulative"); *State v. Huffman*, No. 14-1143, 2015 WL 5278980, at *4 (Iowa Ct. App. Sept. 10, 2015) (finding "reversal is not warranted" when the evidence is "merely cumulative" (citation omitted)).

Further, to the extent that the court did rely on the expert report, there is no risk of prejudice because the information was not in dispute at trial. *In re Det. of Palmer*, 691 N.W.2d 413, 422 (Iowa 2005), *overruled in part on other grounds by* Alcala v. Marriot Int'l, Inc., 880 N.W.2d 699 (Iowa 2016). Stone allowed the evidence to come in at trial through Dr. Fisher's report and through both experts' testimonies. We therefore find no abuse of discretion in admitting the evidence.

*B. Sufficiency of the Evidence.*

Finally, Stone argues that insufficient evidence supports the court's findings on three grounds. Our review of sufficiency-of-the-evidence claims is for correction of errors at law. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). We reverse if the court's determination "is not supported by substantial evidence." *Stenzel*, 827 N.W.2d at 701.

First, Stone challenges the credibility of the victims' testimonies, opining the evidence "raises only suspicion or conjecture" because of the latent disclosures and Stone's denial of the allegations. But it is not our role on appeal to parse out the testimonies; instead, the trial court "was in the best position to assess his credibility." *In re Det. of Barr*, No. 21-1305, 2022 WL 10861330, at *5 (Iowa Ct. App. Oct. 19, 2022). When viewing the evidence in the "light most favorable to the State," *id.* (citation omitted), the testimonies alone are sufficient evidence.

Second, Stone claims the court failed to make required findings under chapter 229A. *See* Iowa Code § 229A.7(1) (requiring the court to "make specific findings on . . . the extent to which the person's incompetence affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on the person's own behalf"). Stone concedes that "[t]he trial court was clearly well aware of [Stone's competency status]" and even made accommodations for him. But the trial court went further in its ruling, acknowledging Stone's accident and that he "now suffers from aphasia which causes him difficulty speaking and understanding conversations." Accordingly, we find Stone's argument without merit.

Third, Stone argues there is insufficient evidence without Dr. Thomas's expert witness report. We disagree. Even if we were to find that the report is inadmissible, "we must consider all evidence admitted during trial, including evidence that may have been admitted erroneously." *Stenzel*, 827 N.W.2d at 701. Stone therefore "gains no ground in urging exclusion of [the evidence] as part of his sufficiency challenge." *State v. Happe*, No. 19-0144, 2020 WL 4497428, at *2 n.2 (Iowa Ct. App. Aug. 5, 2020). At trial, Stone and the State presented directly contradictory expert evidence. Stone's expert said he did not meet the SVP criteria while the State's said he did. In turn, the trial court made a credibility determination, noting that the State's expert was "more convincing when looking at the totality of the circumstances." Because the court "is in a better position to weigh the credibility of the witnesses than we are, we 'readily defer to the district court's judgment' when there is a battle of experts." *In re Det. of Welsh*, No. 20-1282, 2022 WL 108576, at *3 (Iowa Ct. App. Jan. 12, 2022) (citation omitted); accord *State v. Fetters*, 562 N.W.2d 770, 775 (Iowa Ct. App. 1997) ("When the psychiatric testimony is conflicting, the reviewing court will 'not determine anew the weight to be given trial testimony.'" (citation omitted)).

## IV. Disposition.

Because we find that Stone's constitutional rights were not violated, the court did not abuse its discretion in its evidentiary ruling, and sufficient evidence supports the court's verdict, we affirm.

**AFFIRMED.**